PATENT CLOTHING Co., Limited, *v.* GLOVER and another.

*(Circuit Court, S. D. New York.   May 14. 1887.)*

PATENTS FOR INVENTIONS—REISSUE—EXTENSION OF ORIGINAL CLAIM.
    Reissued letters patent No. 9,616, issued March 22, 1881, were granted to
    Redmond Gibbons for an improvement in pantaloons and similar garments,
    by bridging the crotch of the fly-front with a check-piece of cloth, or other
    inelastic, pliable material, thus adding to the durability of the garment by
    preventing the stretch of the cloth or stitch at the crotch.   Claim 2, was de-
    signed to include a check-piece which, instead of bridging the crotch, was,
    when integral with the button-hole strip, a continuation of it around, instead
    of across, the apex of the fly-opening.   *Held* invalid, as an extension of the
    claim of the original patent, and therefore not infringed by the defendants'
    manufacture, which was substantially the same as that of claim No. 2.

*Causten Brown* and *Wm. A. Jenner*, for plaintiff.
*Gilbert M. Plympton*, for defendants.

SHIPMAN, J.   This is a bill in equity to restrain the defendants from
the alleged infringement of the second claim of reissued letters patent
No. 9,616, applied for February 19, 1881, and issued March 22, 1881,
to Redmond Gibbons, for an improvement in pantaloons.   The original
patent was dated June 6, 1876.   The specification of the original. pat-
ent says that the invention "relates to a fastening for the crotch in the
fly of pantaloons and similar garments, and it consists in bridging said
crotch with a check-piece of cloth or other inelastic, pliable material, as

hereinafter fully described." The patentee further says: "The lower end of the button-hole strip does not extend down, and fasten into the crotch, *d*, as in the common construction of pantaloons, but bridges over the crotch. * * * Fig. 4 shows, instead of the preferred construction exhibited in the other figures, a separate piece of cloth, serving as the bridge or check-piece." The single claim of the original patent was as follows:

"In combination with the fly of pantaloons, or similar garments, an inelastic bridge or check-piece, arranged across the crotch thereof, substantially as described, whereby the strain at the crotch, when the fly is opened and spread apart, is received by said bridge or check-piece, instead of at the angle of the crotch itself."

The claims of the reissued patent are as follows:

"1. The combination, with the fly of a pair of pantaloons, or other similar garment, of an inelastic bridge or check-piece arranged across the crotch of the fly, and operating substantially as described, to receive any strain occasioned by the spreading apart of the fly, and which would otherwise be exerted upon the crotch of the fly.

"2. In combination with the fly portion of a pair of pantaloons, or other similar garment, a check-piece made integral with the button-hole strip of the fly, and adapted to prevent any tension at the crotch, *d*, that might operate injuriously upon it."

The overalls which the defendants make do not have a bridge spanning an open space between the bridge and the point where the two sides of the fly meet, but the button-hole strip extends down to, and is fastened at, the crotch, and extends upwards, and is secured to the button strip at the opposite side of said fly portion, being lapped behind the button strip. The overalls which the plaintiff now makes are of the same construction, except that the button-hole strip is lapped upon the front side of the button strip. This difference is not material.

The question which first presents itself is whether, under a proper construction of the reissued patent, it should not be confined to a bridge or check-piece which is arranged across the fly front, and bridges over, and is not fastened at the crotch. The reissue was applied for four years and eight months after the original patent was granted, and several months after the defendants began to make and sell the garments which are said to infringe; but it is earnestly contended that the reissue is not an enlargement of the original patent, but is a more careful statement of the invention which was therein described and claimed. I am clearly of the opinion that the invention of the original patent, as described and claimed therein, was a piece of inelastic, flexible material, arranged across the crotch, as a bridge, with its two ends secured to opposite sides of the fly-front, at points so far down the two sides that, when a strain is brought thereon, the bridge will take the entire strain. The original specification, drawings, and claim show that the bridge was the invention for which the patent was applied for, and that any other invention is beyond its terms. It is also the invention of the first claim of the reissue.

The second claim of the reissue was designed to include a check-piece which is not only integral with the button-hole strip, but which extends

down to, and is fastened at, and crosses the crotch of the fly, and thence extends up upon the other side of the fly, and is fastened to the button strip. This is not the invention of the original patent, which expressly said that the button-hole strip, when serving also as a bridge, does not extend down and fasten into the crotch.

The second claim of the reissue is invalid unless it is limited to the bridge or check-piece of the original claim. With that construction, there is no infringement, and the bill is dismissed.

---

(July 30, 1887.)

On Rehearing.

*Causten Brown* and *Wm. A. Jenner*, for plaintiff.

*Gilbert M. Plympton*, for defendants.

SHIPMAN, J. This is a bill in equity to restrain the defendants from the alleged infringement of the second claim of reissued letters patent No. 9,616, applied for February 19, 1881, and issued March 22, 1881, to Redmond Gibbons, for an improvement in pantaloons. The original patent was dated June 6, 1876.

A brief opinion, in which the bill was directed to be dismissed, was filed on May 14, 1887. Upon the application of the plaintiff, the case was thereafter reargued.

The case depends upon the proper construction of the second claim of the reissued patent, and the construction turns upon the question whether this claim, if construed according to its literal meaning, is an enlargement of the single claim of the original letters patent. The plaintiff contends that the defendants infringe the patented invention, as it was originally described and claimed, and that there was no enlargement in the reissue, but a more accurate statement of the invention which was claimed in the original patent. I therefore quote the substance of the original specification, so that the scope of the invention, as it was therein explained, may be seen.

"My invention relates to a fastening for the crotch in the fly of pantaloons, or similar garments, and it consists in bridging said crotch with a check-piece of cloth or other inelastic, pliable material, as hereinafter fully described. The object of this invention is to prevent that tension at the crotch ordinarily produced either by continued use of the garment, or by any undue strain caused by the assumption by the wearer of any posture of the body, or by the removal of the garment, calculated to produce such an effect. The said improvement is applicable to all descriptions of pantaloons and garments of a similar character; its application to the garment adding greatly to its durability, by preventing the stretch of the cloth or stitching at the crotch.

"To enable persons skilled in the art of manufacturing the garments to which my invention is adaptable, I describe the same as follows, referring to the annexed drawing: Fig. 1 is a view of the upper part of a pair of pantaloons, the front of the fly being turned down, so as to show the application of the improvement. Figs. 2 and 3 are, respectively, edge and face views, on an enlarged scale, of the fly, extended so as to show the attachment of the im-

provement. Fig. 4 shows a modification in construction. In figs. 1, 2, 3, the button strip of the fly is represented by *a*, and the buttons, *b*. The button-hole strip is indicated by *c*, and between the button-holes it is stitched to the front of the garment in the ordinary way. The lower end of the button-hole strip does not extend down, and fasten into the crotch, *d*, as in the common construction of pantaloons, but bridges over the crotch, being securely stitched at *e* to the button strip, *a*. The button-hole strip is also firmly secured at *f* below the lower button-hole. Fig. 4 shows, instead of the preferred construction exhibited in the other figures, a separate piece of cloth serving as the bridge or check-piece. This construction I deem to be within the scope of my invention.

"My invention, as seen in the manner preferred by me, adds nothing to the cost of the garment, but rather cheapens its manufacture, by causing the attachment of the lower end of the button-hole strip to be made at a point more easily reached than that at which the connection is ordinarily made."

The letter *d* is the crotch of the fly, and is at the crotch seam of the fly, and that seam is at the upper end of the seam which runs from the crotch between the legs upwards to the crotch of the fly. The letter *e* is at a point on the button strip opposite to *f* upon the button-hole strip. The points *e* and *f*, as represented in the drawings, are so far removed from the crotch, *d*, that there is a considerable open space under the line or strip which unites *e* and *f*. Each of the drawings, except No. 3, which is a plan view, shows an open space under the check-piece, and represents the check-piece as one side of a triangle, of which the other two sides are the right and left fly-fronts converging to an apex at *d*.

The claim of the original patent was as follows:

"In combination with the fly of pantaloons, or similar garments, an inelastic bridge or check-piece, arranged across the crotch thereof, substantially as described, whereby the strain at the crotch, when the fly is opened and spread apart, is received by said bridge or check-piece, instead of at the angle of the crotch itself."

The claims of the reissued patent are as follows:

"1. The combination, with the fly of a pair of pantaloons, or other similar garments, of an inelastic bridge or check-piece arranged across the crotch of the fly, and operating substantially as described, to receive any strain occasioned by the spreading apart of the fly, and which would otherwise be exerted upon the crotch of the fly.

"2. In combination with the fly portion of a pair of pantaloons, or other similar garment, a check-piece made integral with the button-hole strip of the fly, and adapted to prevent any tension at the crotch, *d*, that might operate injuriously upon it."

The overalls which the defendants make do not have a bridge spanning an open space between the bridge and the point where the two sides of the fly meet, but the button-hole strip extends down to, and is fastened at, the crotch of the fly, and extends upwards, and is secured to the button strip at the opposite side of said fly portion, being lapped behind the button strip. The overalls which the plaintiff now makes are of the same construction, except that the button-hole strip is lapped upon the front side of the button strip. This difference is not material.

The patentee's licensees instructed their employes, in 1877, to bring the sewing of the crotch seam as close as possible up to the check-piece.

The reissue was applied for after the defendants began to make and sell the garments which are said to infringe.

The question which first presents itself is whether, under a proper construction of the second claim of the reissued patent, it should not be confined to a bridge or check-piece which is arranged across the fly-front and bridge over the crotch of the fly, as shown in drawings 1, 2, and 4.

The plaintiff insists that the actual invention of the patentee was a check-piece which received the force of any unusual strain upon the fly front of overalls; that it is immaterial whether the strip is arranged as a bridge, with an open space underneath, or as a continuation of the button-hole strip, beyond the apex of the fly-opening, up to the button strip; that the open space has no operation, and that the original specification is, at least, consistent with the invention, as it is now used, and does not demand a limited and narrow construction, which would deprive the owners of the reissued patent of the benefit which would otherwise result therefrom. It is true that the idea of a strip of cloth, which shall serve as a strengthening piece or a protection against a strain at the angle of the fly-front, is better developed by making the stay, when integral with the button-hole strip, a continuation of it around, instead of across, the apex of the fly-opening, and that a stay with an open space underneath it has apparently no advantage over the other method, except in economy of manufacture; and it is also true that it is the duty of a court to give letters patent for inventions a construction which shall sustain the first claims of the inventor, and shall relieve him from the injurious effect of an imperfect description of the invention which he had attempted to secure. If, however, the patentee has plainly pointed out, and by his description has established, the boundaries of his invention, they cannot be enlarged by construction. Recognizing this principle, and that the question is not what the patentee might have applied for, but what did he apply for and receive, the plaintiff says that the original patent, fairly construed, is not limited to a stay or check-piece which is a bridge having an open space under it.

The specification shows two methods of construction; one, shown in Fig. 4, which is a separate piece of cloth, and which is a bridge, while the button-hole strip is continued, as previously, to the crotch of the fly; the other, shown in the other figures, in which the button-hole strip becomes the bridge. The mooted point is whether this strip is described as not extending down and fastening into the crotch, but, on the contrary, bridging over it, or whether it is described as not extending to the crotch and stopping there, as in the common construction, but extending beyond the angle and lapping into the button strip. The plaintiff insists that when the patentee said in his specification that the lower end of the button-hole strip does not extend down to, and fasten into the crotch, d, as in the common construction of pantaloons, he meant that the strip does not extend down into the crotch, d, and become incorporated with the fly-crotch seam, and stop there as in the common construction, but bridges over the crotch. It says, also, that, in the

common construction of fly-fronts, the lower end of the button-hole strip passed down into, and stopped in the seam of the fly-crotch, whereas, in the patented improvement, the lower end of the strip is not thus carried down into, and incorporated with, the fly-crotch seam, but is carried up on the other side and is attached to the button strip.

The natural construction of the specification is that, when the patentee described a bridge which was arranged across the crotch of a fly, he meant a brace or stay which crossed, and did not go around, the apex of the fly-front. A different construction would not occur to the reader, until he learned the fact that such a construction had been suggested, or that it might be desirable. The idea which is naturally communicated by the word "bridge," and by the expressions "bridge over" and "arranged across the crotch," is not that of a stay which is not a bridge, but is that of a stay which spans an open space. The employment of these terms by the patentee is not conclusive as to his meaning, but he used words unnaturally, if he intended to convey the idea that his check-piece went around and not across the apex of the fly-opening. But, turning to the sentence which is the center of the discussion, it seems to me that the words, "the lower end of the button-hole strip does not extend down and fasten into the crotch, *d*, as in the common construction of pantaloons, but bridges over the crotch," cannot fairly be interpreted to mean that the strip does not simply extend down, and fasten into the crotch, and stop then, as in the common construction, but bridges over, because the patentee described in the concluding part of the sentence and of the paragraph what he meant by the words "bridge over," by saying: "Being securely stitched at *c* to the button strip, *a*. The button-hole strip is also firmly secured at *f*, below the lower button-hole." The inventor here declares that the button-hole strip is a bridge, inasmuch as it is securely stitched to the button strip at *e*, and is firmly secured on its own side at *f*. The old construction by which it went down to the crotch is abandoned, and it now crosses over the crotch at *f* and *e*.

Again, the drawings, which are a picture of the invention, show clearly what the patentee was trying to describe in words. They show a bridge, and nothing but a bridge, and leave no doubt in my mind that the only invention for which the patentee applied for a patent was that of a check-piece, which at the points *e* and *f*, below the lower button-hole, crossed over and connected the right and left fronts of the fly. Any other construction of the patent would not only disregard but would contradict the drawings.

The invention of the original patent, as well as of the first claim of the reissue, was a piece of inelastic, flexible material arranged across the crotch, as a bridge, with its two ends secured to opposite sides of the fly-front, at points so far down the two sides that, when a strain is brought thereon, the bridge will take the entire strain. The second claim of the reissue was designed to include a check-piece which is not only integral with the button-hole strip, but which extends down to, and is fastened at, the crotch of the fly, and extends up upon the other side of the fly, and is fastened to the button strip. This claim is in-

valid, unless it is limited to the bridge or check-piece of the original claim. With that construction, there is no infringement, and the bill is dismissed.