# UNITED STATES v. PARKHURST–DAVIS MER-CANTILE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 180. Submitted January 31, 1900. — Decided February 26, 1900.

This case comes within the provision of Rev. Stat. § 720 to the effect that no writ of injunction shall be granted by a court of the United States to stay proceedings in any court of a State except in matters of bankruptcy.

On August 21, 1897, the United States filed their bill in the Circuit Court of the United States for the District of Kansas seeking an injunction restraining defendants from enforcing in the courts of the State of Kansas certain claims against Eli G. Nadeau and John Nadeau, members of the

Prairie band of Pottawatomie Indians, and residing on a reserve within the limits of that State. On November 22, 1897, an amended bill was filed, to which bill the defendants demurred, and on March 4, 1898, the demurrer was sustained and the bill dismissed. From such order of dismissal the Government took its appeal directly to this court.

The amended bill alleged in substance that the two Indians were members of the Prairie band of Pottawatomie Indians; that such band had a reservation in the county of Jackson, within the limits of that State; that by the act of Congress admitting Kansas into the Union it was expressly provided, among other things, as follows, to wit: "That nothing contained in the said constitution respecting the boundary of said State shall be construed to impair the rights of person or property now pertaining to the Indians in said Territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to include any territory which, by treaty with such Indian tribe, is not, without the consent of said tribe, to be included within the territorial limits or jurisdiction of any State or Territory; but all such territory shall be excepted out of the boundaries, and constitute no part of the State of Kansas, until said tribe shall signify their assent to the President of the United States to be included within said State, or to affect the authority of the Government of the United States to make any regulation respecting such Indians, their lands, property or other rights by treaty, law or otherwise, which it would have been competent to make if this act had never passed;" act of January 29, 1861, c. 20, 12 Stat. 127; and that the Prairie band had never in any manner consented or signified to the President of the United States that any rights of person or property formerly appertaining to these members should be extinguished, nor have they ever consented that they or their reservation should be governed or controlled by the laws of the State of Kansas. The bill then proceeds to state a series of facts tending to show that this reserve had been exempted from the laws of the State of Kansas; that the tribal relation had been preserved, and the Government superintendency and

control over the Indians maintained.  It further disclosed that
the two Indians had received patents for their respective por-
tions of the reservation, as provided in section 5 of the act of
Congress of February 8, 1887, c. 119, 24 Stat. 388; that they
resided each on the separate tract or parcel allotted and
patented to him; but, as averred, they had never been
naturalized as citizens of the United States, and had main-
tained in all respects their peculiar life as members of the
Indian tribe.  The bill also disclosed that the Bureau of
Indian Affairs, prior to the commencement of the actions
referred to, had lawfully authorized the two Nadeaus and
one Henry B. Ekcam, a white man, to trade and do busi-
ness as licensed traders of the United States, with said Prairie
band of Pottawatomie Indians upon said reservation, under
the firm name and style of Eli G. Nadeau, Son & Company;
and averred that the said Ekcam, in May, 1897, became an
embezzler, and fled the country, with practically all the
available means and assets of the firm except a stock of
merchandise located in the storehouse on the reservation.
It alleged that the various defendants, including among
them the sheriff of Jackson County, were, by several writs
already issued out of the state courts, attempting to enforce
claims of the defendants, other than the sheriff, against the
property of said Nadeau and his son.  The prayer of the
bill was for an injunction restraining all the parties from
further prosecuting those actions or in any manner proceed-
ing in the state courts to enforce those claims.

*Mr. Solicitor General* and *Mr. F. E. Hutchins* for the
appellants.

No appearance for appellees.

Mr. Justice Brewer, after stating the case as above, deliv-
ered the opinion of the court.

It is conceded by counsel for the Government that so much
of the bill as alleges that by treaties with the Pottawatomie

Indians and the act admitting Kansas into the Union the reservation was excluded from the State and from, the jurisdiction of Kansas, is erroneous, and may be ignored.

Section 6 of the act of February 8, 1887, 24 Stat. 388, c. 119, *supra*, contains this provision:

"Each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside."

Upon these admissions and facts the case comes clearly within the provision of section 720 of the Revised Statutes, to the effect that no writ of injunction shall be granted by a court of the United States to stay proceedings in any court of a State except in matters of bankruptcy. *Peck* v. *Jenness*, 7 How. 612, 625; *Watson* v. *Jones*, 13 Wall. 679, 719; *Haines* v. *Carpenter*, 91 U. S. 254, 257. In this latter case, Mr. Justice Bradley, delivering the opinion of the court, said:

"In the first place, the great object of the suit is to enjoin and stop litigation in the state courts, and to bring all the litigated questions before the Circuit Court. This is one of the things which the Federal courts are expressly prohibited from doing. By the act of March 2, 1793, it was declared that a writ of injunction shall not be granted to stay proceedings in a state court. This prohibition is repeated in sec. 720 of the Revised Statutes, and extends to all cases except where otherwise provided by the bankrupt law."

Without stopping to consider any other questions presented by counsel this is sufficient to sustain the ruling of the Circuit Court, and the decree is

*Affirmed.*