### UNITED STATES v. McINTOSH.

District Court, E. D. Virginia.
March 24, 1932.

R. H. Talley, U. S. Atty., of Richmond, Va., Paul W. Kear, Sp. Asst. to the Atty. Gen., and H. H. Rumble, Sp. Asst. to the Atty. Gen., and Asst. U. S. Atty., of Norfolk, Va.

E. C. Fletcher, of Washington, D. C., and Thomas H. Lion, of Manassas, Va., for defendant.

CHESNUT, District Judge.

In this equity case the United States of America, as complainant, has filed its bill to quiet its title to certain lands constituting a part of the Marine Corps Base, at Quantico, Va.; and, as incidental thereto, to enjoin the prosecution of an ejectment suit now pending in the circuit court of Prince William county, Va., brought by the defendant in this case against Smedley D. Butler and others, sued individually but by reason of the fact that they are custodians of the property.

The bill of complaint was filed May 27, 1931, and on October 12, 1931, Judge Way, after notice and hearing, granted a preliminary injunction against the further prosecution of the ejectment suit. On August 17, 1931, the defendant filed a motion to require the complainant to make the bill more definite and certain in some respects. And on January 12, 1932, the defendant filed a motion to dissolve the injunction.

After hearing counsel orally and studying briefs submitted by them, I have reached the conclusion that both motions should be overruled. My reasons therefor are as follows:

The bill of complaint alleges that during the recent war with Germany and Austria, during 1918, the Congress of the United States passed an act (40 Stat. 724, 738) authorizing the President to acquire lands (including those involved in this suit) as a permanent Marine Corps post at Quantico, Va., with authority to the President to take over immediate possession and title to the lands, the United States to make just compensation therefor in an amount to be determined by the President, and, if the amount was unsatisfactory to the owner, he should be paid 75 per cent. thereof immediately, with leave to sue for the deficiency in just compensation; that, pursuant to the provisions of the act, the President by proclamation dated November 4, 1918 (40 Stat. 1874), did take title to and possession of the lands and determined that just compensation would be $77,060; and that the owner, being dissatisfied with that amount, was then paid 75 per cent. thereof, to wit, $57,795, and thereafter sued in the Court of Claims for the balance of just compensation, receiving in that court an award of $22,905, which latter amount was paid to the owner on February 17, 1923.

The bill further alleges that the General Assembly of Virginia, by Act approved March 16, 1918, chapter 382, page 568, ceded jurisdiction over such lands as might be acquired in the state of Virginia by the United States for various governmental purposes, including sites acquired for military and naval camps or stations; and that, since the acquisition of title to and possession of said lands by the United States, it has expended large sums of money in improving and equipping the same as a Marine Corps base, and the property now constitutes an essential part of the naval defense of the government. It is further alleged that the whole Naval Base Station as it now exists was acquired by the government from more than fifty different owners, including the defendant owner, and that recently an ejectment suit has been brought by the defendant against Smedley D. Butler and others as individuals, but who are officers of the United States in custody of the property, to recover its possession, and that similar suits are about to be filed by other claimants affecting other properties now included in the Quantico Naval Base; and that other proceedings have been taken or are contemplated by the defendant and others alleged to be similarly situated to embarrass the United States in the quiet possession of the property. It is also pointed out in the bill that the United States is not a party to the ejectment suit and could not be sued therein without its consent, which has not been given; and that under the Constitution of the United States, section 2, article 3, and the United States Code, title 28, § 41 (28 USCA § 41), this court has sole and exclusive jurisdiction of this suit in equity brought by the United States to quiet its title to the land. An injunction, both preliminary and perpetual, is prayed for against the further prosecution of the ejectment suit already begun or other similar legal proceedings designed or intended to disturb the complainant in the possession, use, and enjoyment of the property.

While the defendant's answer has not yet been filed, his contention appears to be, in part at least, that the United States did not validly acquire title under the Proclamation by the President based on the war act of 1918, and that title could only be legally acquired under the general federal condemnation statute. Full consideration of this substantial title question is reserved for final hearing on the merits of the case.

The grounds assigned in the motion to dissolve the injunction are: (1) That injunctions against proceedings in a state court are specially prohibited by title 28, § 379, of the United States Code (28 USCA § 379); (2) that the preliminary injunction was issued without requiring the complainant to file a bond as required by the United States Code, title 28, § 382 (28 USCA § 382); (3) lack of equity in the bill; (4) the plaintiff comes into court with unclean hands; and (5) because there is complete and adequate remedy at law.

I think it unnecessary to discuss at any length reasons 3, 4, and 5 for the dissolution of the injunction. It is clear that the bill is one to quiet title to lands, which

576

is a well-recognized branch of equity jurisdiction, and it also appears that, as the suit is brought by the United States of America, it is one within the exclusive jurisdiction of this court. The ejectment suit in the state court brought against the custodians of the property as individuals can obviously have no final and conclusive effect against the title or ownership of the United States in and to the property, because the United States is not a party to the ejectment suit and could not be made a party thereto. And under the allegations of the bill there seems to be no merit in the suggestion that the complainant comes into court with unclean hands. It is, I think, equally clear that the complainant does not have an adequate remedy at law.

More substantial questions are raised by the first and second grounds for dissolving the injunction.

█ Section 379 of title 28 of the Code, 28 USCA § 379 (formerly section 265 of the Judicial Code, and section 720, Revised Statutes), provides as follows: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

This statute is sweeping in the generality of its provision, and is literally broad enough to apply to the injunction in this case, if otherwise applicable to a suit of this nature. While the injunction does not specifically enjoin or stay the proceedings in the state court, nevertheless it does enjoin the defendant as a litigant, and is, in legal effect, a stay of proceedings in the state court. The substantial question is whether the statute, despite the generality of its language, is really applicable to this present equity suit of which this court has *sole and exclusive* jurisdiction. In this connection, it is to be borne in mind that, under the allegations of the bill, the United States is the sole and absolute owner of this property in law and in equity; that it has good and complete title thereto, has paid full and just compensation therefor, has been in undisputed possession of the property for more than thirteen years, has spent large sums of money in improving it, and the property constitutes an essential part of the naval defense of the United States, and the necessary effect of the prosecution of the ejectment suit in the state court would be to embarrass the United States in an important governmental function; and also that the result of the ejectment suit, if favorable to the plaintiff, would not be conclusive against the United States which is not a party thereto; and therefore no final and complete and binding adjudication of the title to and ownership of said lands claimed by the United States can possibly legally be had except in this court.

The question is whether a reasonable construction of section 379 above quoted makes it applicable to a case of this character. It was originally passed on March 2, 1793, a few years after the organization of the government under the Constitution. As a matter of history and judicial decision, it is clear that the main purpose of the statute was to prevent unseemly conflicts in the exercise of their respective jurisdictions by the state and federal courts. Under the Constitution and statutes of the United States, certain cases are within the *concurrent jurisdiction* of both state and federal courts. Where this is the situation, the desirability and importance of the application of section 379 is obvious. It was intended to give the force of positive law to the rules of comity which, even without the statute, should be recognized and applied as between state courts and federal courts having concurrent jurisdiction. Phelps v. Mutual Reserve Fund Life Association, 112 F. 453, 61 L. R. A. 717 (C. C. A. 6th), affirmed, 190 U. S. 147, 23 S. Ct. 707, 47 L. Ed. 987.

But in cases where the jurisdiction of the federal courts is exclusive, other federal statutes must be considered in connection with section 379, and particularly section 377 of title 28 of the Code (28 USCA § 377), which provides as follows: "The Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." See Kline v. Burke Const. Co., 260 U. S. 226, 229, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

It has frequently been held that, despite section 379, federal courts may issue injunctions to protect their own jurisdiction, because, properly construed, the section has no application to such cases. French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Julian v. Central Trust Co., 193 U. S. 93, 112, 24 S. Ct. 399, 48 L. Ed. 629. Thus, where cases are properly removed from a state to a federal court the latter, despite section 379,

may enjoin from further prosecution in the state courts, because the jurisdiction of the federal court has become exclusive. Wagner v. Drake (D. C.) 31 F. 849, 851; Sharon v. Terry (C. C.) 36 F. 337, 366, 1 L. R. A. 572; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497. And in admiralty, in proceedings for limitation of liability, it is common practice to enjoin the prosecution of actions at law pending in state courts. In such cases section 379 is not applicable because there is no proper jurisdiction in the state court to be interfered with. In Re Long Island N. S. P. & F. Transportation Co. (D. C.) 5 F. 599, at page 628, Judge Choate said: "Section 720 [28 USCA § 379] has obviously its principal application to the restraint of suits, which, but for the injunction, the state court would have jurisdiction to go on with and determine." See, also, In re Whitelaw (D. C.) 71 F. 733; Richardson v. Harmon, 222 U. S. 96, 32 S. Ct. 27, 56 L. Ed. 110.

In cases where federal jurisdiction is exclusive, the application of section 379 would defeat its real purpose and intention (to avoid conflict between courts) because the federal case *must* go on, by reason of the supremacy of the laws of the United States, under the Constitution, and, if the state court case also goes on, confusion and possible clashes might unfortunately occur.

The cases in the Supreme Court construing and applying section 379 show that the generality of its language is nevertheless impliedly limited, so that it is not applicable to cases (such as this) where the federal courts under other statutes have exclusive jurisdiction, and the issuance of an injunction is necessary to the complete exercise of that exclusive jurisdiction.

Thus the Supreme Court in Wells Fargo & Co. v. Taylor, 254 U. S. 183, 41 S. Ct. 93, 96, 65 L. Ed. 205 (Mr. Justice Vandevanter rendering the opinion) said with reference to this section: "The provision has been in force more than a century and often has been considered by this court. As the decisions show, it is intended to give effect to a familiar rule of comity and like that rule is limited in its field of operation. Within that field it tends to prevent unseemly interference with the orderly disposal of litigation in the state courts and is salutary; but to carry it beyond that field would materially hamper the federal courts in the discharge of duties otherwise plainly cast upon them by the Constitution and the laws of Congress, which of course is not contemplated. As with many other statutory provisions, this one is designed to be in accord with, and not antagonistic to, our dual system of courts. In recognition of this it has come to be settled by repeated decisions and in actual practice that, where the elements of federal and equity jurisdiction are present, the provision does not prevent the federal courts from enjoining the institution in the state courts of proceedings to enforce local statutes which are repugnant to the Constitution of the United States (Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764; Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Missouri v. Chicago, Burlington & Quincy R. R. Co., 241 U. S. 533, 538, 543, 36 S. Ct. 715, 60 L. Ed. 1148), or prevent them from maintaining and protecting their own jurisdiction, properly acquired and still subsisting, by enjoining attempts to frustrate, defeat or impair it through proceedings in the state courts (French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Julian v. Central Trust Co., 193 U. S. 93, 112, 24 S. Ct. 399, 48 L. Ed. 629; Chesapeake & Ohio Ry. Co. v. McCabe, 213 U. S. 207, 219, 29 S. Ct. 430, 53 L. Ed. 765; Looney v. Eastern Texas R. R. Co., 247 U. S. 214, 221, 38 S. Ct. 460, 62 L. Ed. 1084), or prevent them from depriving a party, by means of an injunction, of the benefit of a judgment obtained in a state court in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience (Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Ex parte Simon, 208 U. S. 144, 28 S. Ct. 238, 52 L. Ed. 429; Simon v. Southern Ry. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492; Public Service Co. v. Corboy, 250 U. S. 153, 160, 39 S. Ct. 440, 63 L. Ed. 905; National Surety Co. v. State Bank of Humboldt, 120 F. 593, 56 C. C. A. 57, 61 L. R. A. 394)."

And a few years later the Supreme Court in Sovereign Camp, W. O. W., v. O'Neill, 266 U. S. 292, 298, 45 S. Ct. 49, 51, 69 L. Ed. 293, by Mr. Justice Sanford, said: "This section does not deprive a district court of the jurisdiction otherwise conferred by the federal statutes, but merely goes to the question of equity in the particular bill; making it the duty of the court, in the exercise of its jurisdiction, to determine whether the specific case presented is one in which relief by injunction is prohibited

by this section or may nevertheless be granted."

■ So far as I am aware, section 379 has not been applied to a case of this nature where, within the exclusive jurisdiction of the federal courts, the United States, as a property owner, is seeking to protect its own property. And, on the contrary, in at least two cases of a similar nature, it has been held by District Courts that an injunction against a state court action which would interfere with the federal jurisdiction is proper. The case of United States v. Inaba, 291 F. 416, 417 (D. C. E. D. Wash. S. D.), is directly in point. There an action was commenced in a state court to foreclose labor liens against crops of a tenant under lease from the United States as trustee for an Indian allottee; and a receiver had been appointed by the state court. Thereafter the United States brought suit in the District Court to foreclose a landlord's lien on the crops, and a temporary restraining order was issued against the receiver. Motion to dismiss the bill based on section 265 of the Judicial Code (now 28 USCA § 379) was denied. District Judge Webster said: "No case has been cited by counsel, and I have not been able to find any, in which section 265 has been considered in connection with a case wherein the United States, as such, as a proper plaintiff was suing in its own courts to protect its own property, or in order faithfully to perform its duties as trustee of property held by it in trust for others. In the many authorities cited by counsel for defendants, the only case wherein the United States was the moving party is the case of Parkhurst-Davis Merc. Co., 176 U. S. 317, 20 S. Ct. 423, 44 L. Ed. 485."

The Parkhurst-Davis Case is relied upon by the defendant in this case. There, the Supreme Court, having found that the Indians, on behalf of whom the United States was suing, were fully subject to the state law, dismissed the government's bill for injunction against state litigation on the basis of section 720, Rev. St. (now 28 USCA § 379). The Parkhurst-Davis Case was distinguished in United States v. Inaba, the court saying: "The Indians in the Parkhurst-Davis Case were sui juris, and able under the law to sue for their own protection; title in their lands being vested in them in fee. For these reasons, we do not consider that case as controlling here."

And I may add as a further ground for distinction that the government's suit in the Parkhurst-Davis Case obviously lacked substantial equity under the facts found, and the decision of the Supreme Court may possibly also be explained on that ground, and in accordance with what was later said by the Supreme Court in Sovereign Camp, W. O. W., v. O'Neill in 266 U. S. 292, 298, 45 S. Ct. 49, 69 L. Ed. 293, as above quoted.

In United States v. Babcock, 6 F.(2d) 160, 161, the District Court said: "While the Judicial Code provides that a writ of injunction shall not be granted in any court of the United States to stay proceedings in any state court, this court is of the opinion that this rule is not intended to apply to an action wherein the United States government is a party, and wherein it is necessary to issue such injunction to protect the interests of the government of the United States."

On appeal, the right to issue the injunction was affirmed, although on a narrower ground.

In re Long Island N. S. P. & F. Trans. Co. (D. C.) 5 F. 599, at page 629, Judge Choate said: "The suggestion that the court which first obtains jurisdiction of a matter has the right to go on and determine the cause, has no force in a case where by a valid statute a court subsequently obtaining jurisdiction is vested with exclusive jurisdiction."

The historic case of United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171, involved the title of the United States to "Arlington," which had theretofore belonged to the Lee family. There, as here, an action of ejectment had been brought in the state court by the Lee heirs, not against the United States, but against an officer of the United States who was custodian of the property. The case was removed to the federal court (Circuit Court for the Eastern District of Virginia) for trial, and resulted in a verdict for the plaintiff, which, on appeal, was affirmed by a divided court. The opinion of the majority pointed out that the remedy of the United States government, if its title had been good in such a case, would have been to file a bill in equity to quiet title and enjoin adverse action. At page 222 of 106 U. S., 1 S. Ct. 240, 262, the court said: "Another consideration is that since the United States cannot be made a defendant to a suit concerning its property, and no judgment in any suit against an individual who has possession or control of such property can bind or conclude the government, as is decided by this

court in the case of Carr v. United States [98 U. S. 433, 25 L. Ed. 209], already referred to, the government is always at liberty, notwithstanding any such judgment, to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights. Hence, taking the present case as an illustration, the United States may proceed by a bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be obtained. Or it may bring an action of ejectment, in which, on a direct issue between the United States as plaintiff and the present plaintiff as defendant, the title of the United States could be judicially determined."

While the statute under consideration was not expressly referred to by the court, it cannot be assumed that it was not in contemplation, as it had been in force since 1793.

█ █ There is another consideration which supports the injunction in this case. It is alleged in the bill that jurisdiction over the lands involved in the suit has been ceded by the state of Virginia to the United States government. An action of ejectment is necessarily local as to the venue; that is to say, it must be brought in a court which has territorial jurisdiction over the land. If the state of Virginia has ceded jurisdiction over the land to the federal government, it is not perceived how the Virginia court could have jurisdiction in an ejectment suit concerning it. And, indeed, it is called to my attention by counsel that the Virginia courts have so applied the law in a case involving similar issues recently tried in Norfolk, the title of the case being Fidelity Title & Land Corporation v. Burrage, decided by the court of law and chancery of the city of Norfolk, with refusal of a writ of error in the case by the Supreme Court of Appeals of Virginia.

 The second ground for the dissolution of the injunction is that no bond was required. Title 28, USCA § 382, provides as follows: "Except as otherwise provided in section 26 of Title 15, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby."

This statute is a codification of the Act of Congress of October 15, 1914, chapter 323. The government says that it is not applicable to this case because section 870 of title 28, USCA, provides that bonds in judicial proceedings are not required to be given by the United States. This latter statute as codified reads: "Whenever a writ of error, appeal, or other process in law, admiralty, or equity, issues from or is brought up to the Supreme Court, or a *circuit court of appeals,* either by the United States or by direction of any department of the government, no bond, obligation, or security shall be required from the United States, or from any party acting under the direction aforesaid, either to prosecute said suit, or to answer in damages or costs." (Italics supplied.)

This statute was previously section 1001, Rev. St. and was derived from the Act of February 21, 1863, chapter 50, and the Act of July 27, 1868, chapter 255. As now codified it is apparently applicable only to appellate proceedings and is included in title 28 under the subheading of "Procedure on Error and Appeal" (section 861 et seq.). It is to be noted the statute refers to writs of error, appeal, or other processes in law, admiralty or equity, issuing from or "brought up to the Supreme Court or *circuit courts of appeals.*" It is, however, pointed out in the 1931 cumulative annual pocket part for title 28 of the U. S. Code Annotated that the phrase "circuit court of appeals" has been substituted by the codifier for the phrase "circuit court," which appeared in Revised Statutes, § 1001, and in the original act. The circuit court was abolished by section 289 of the Act of March 3, 1911, chapter 231 (28 USCA § 431 note). The Act of March 3, 1911, supra, § 291 (28 USCA § 431 note), provided that: "Whenever in any law not embraced within this Act * * * any reference is made to, or any power or duty is conferred or imposed upon, the *circuit* courts, such reference shall, upon the taking effect of this Act * * * be deemed and held to refer to, and to confer such power and impose such duty upon, the *district* courts."

The act of Congress providing for the compilation of the United States Code provided that the Code should be prima facie evidence of the statutory law, and further provided: "In case of any inconsistency arising through omission or otherwise between the provisions of any section of this Code and the corresponding portion of leg-

islation heretofore enacted effect shall be given for all purposes whatsoever to such enactments." (See Act of the 69th Congress entitled "An Act to consolidate, codify, and set forth the general and permanent laws of the United States in force December seventh, one thousand nine hundred and twenty-five," printed and contained in USCA, pp. 3, 4, immediately preceding title 1).

In United States v. Bryant, 111 U. S. 499, 4 S. Ct. 601, 28 L. Ed. 496, it was held that the Rev. St. § 1001, exempted the United States from giving bond in an attachment case in the Circuit Court of the United States for the Southern District of Alabama, although required by an Alabama statute, the Conformity Act not applying to the case in view of Rev. St. § 1001.

In United States v. Kinney (D. C. E. D. Penna. 1920) 264 F. 542, 544, it was said that: "While the section is collocated with others dealing with appeals, its terms are broad enough to cover any process in law issuing from a Circuit (District) Court."

It seems clear, therefore, that section 870 of title 28 exempts the government from giving bond for the injunction in this case, unless it has been impliedly repealed by the later act of 1914, now section 382 of title 28, and the defendant contends for the implied repeal. But the act of 1914 does not expressly repeal the prior act, and it is a familiar rule of statutory construction that repeals by implication are not favored, and, where two statutory enactments can stand together, both should be given effect. Bearing in mind that the United States is sovereign, and that it has the undoubted right, subject only to self-imposed statutory restrictions, to resort to its own courts for relief in proper cases, it is, in my opinion, unreasonable to infer an intention on the part of Congress in the later general act of 1914 to impliedly repeal the earlier act, which seems to indicate a general policy not to burden the sovereign government with the obligation of giving bond in proceedings in its own courts. See United States v. Herron, 20 Wall. 251, 22 L. Ed. 275; Guarantee Title Co. v. Title Guaranty Co., 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706.

It is also urged by the defendant that, even if this is a case in which the court can properly in its discretion issue a preliminary injunction without bond, nevertheless it should not do so unless the case clearly presents a real need for the injunction, and the bill in this case does not show a situation in which an injunction is really necessary. But I am unable to accede to this view of the nature of the case made by the bill. Although it is apparently true that the result of the ejectment case, if prosecuted to a final and successful conclusion by the plaintiff in the state court, would not constitute an adverse result binding on the United States, nevertheless it is equally apparent, as a practical matter, that the government would be inconvenienced by the necessary attendance of its officers in defense of the suit against them as individuals, and the proceeding as a whole is a practical, if not an effectual, legal threat against the title of the United States in and to property which is now an essential part of the national defense. And another consideration bearing on the equities is the fact appearing from the allegations of the bill that the defendant has apparently voluntarily delayed for a period of twelve years or more to seek enforcement of the rights now claimed in the ejectment suit. It is difficult to see how a comparatively short further delay in the final determination of the case incident to the present equity suit will materially prejudice the defendant. Added to this is the important further consideration that no final determination of the question that is binding on the United States can be had except in this proceeding. It would seem, therefore, that the defendant should rather welcome than resist the progress of this case in which alone there can be a binding determination of his claim.

With respect to the motion to make the bill more definite and certain in particular allegations, I think a discussion in detail is unnecessary. I am satisfied that the bill is drawn quite clearly and fully informs the defendant of the case to be met. As indicated at the oral argument, upon the request of the defendant I will sign orders for the production at the trial of certain documents deemed important by the defendant for its defense on the merits. The aid and process of the court will be available to the defendant for the presentation of all proper defenses, and, of course, nothing herein said is intended to bear upon the merits of the case to be determined only upon final hearing.

As the injunction is to be continued pending final hearing, I shall be glad, upon application of counsel, to assign an early date for the hearing of the case on the merits after the defendant's answer has been filed.

For these reasons it is hereby ordered this 24th day of March, 1932, by the District Court of the United States for the Eastern District of Virginia, that the defendant's motion to make the bill of complaint more definite and certain is hereby overruled. And it is further ordered that the motion to dissolve the preliminary injunction heretofore issued be, and the same is hereby, overruled.