### THE PIETRO CAMPANELLA.

### THE EURO.

### UNITED STATES v. THE PIETRO CAMPANELLA.

### SAME v. THE EURO.

### DICHMANN, WRIGHT & PUGH, Inc., v. TITO CAMPANELLA SOCIETA DI NAVIGAZIONE.

Nos. 2490, 2498, 2499.

District Court, D. Maryland.

Oct. 22, 1941.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., and H. B. Finn, Sp. Asst. to Atty. Gen., and T. F. McGovern, Atty. Admiralty Sec. Claims Div. Dept. of Justice, both of Washington, D. C., for the Government.

Hilary W. Gans and Charles Ruzicka, both of Baltimore, Md., and Homer L. Loomis, of New York City, for defendants.

658

Geo. W. P. Whip, of Baltimore, Md., for attaching creditor.

CHESNUT, District Judge.

The first two of the above three cases are libels filed by the United States for forfeiture of the Italian steamships Campanella and Euro respectively under the Act of Congress of June 15, 1917, as amended, now codified as 50 U.S.C.A. §§ 191–194, in alleged consequence of the wilful injury to the ships and their machinery and equipment for which certain officers and seamen thereof had previously been convicted in this court under 18 U.S.C.A. § 502, appeals in the latter cases being now pending. The third of the above cases, No. 2490, is a proceeding by a private party against the Campanella by a writ of foreign attachment to secure payment of an alleged debt due from the owners of the ships. The latter suit was filed in this court on May 14, 1941, and the former suits for forfeiture were filed July 19, 1941.

In the libel suits for forfeiture, petitions were filed by the Government on October 6, 1941, alleging that the United States Maritime Commission, by order effective as of September 11, 1941, did "take over the possession and use of the aforesaid vessels", under the authority of the Act of Congress of June 6, 1941, Public Law 101, 77th Congress, ch. 174, 1st session, H. R. 4466, 46 U.S.C.A. note preceding § 1101. The petitions prayed that an order of court be entered "directing the marshal of this court and Collector of Customs to comply with the said notice of taking issued by the United States Maritime Commission without prejudice, however, to any of the rights of the parties libelant to such proceedings or under the said Act of June 6, 1941, this court retaining its custody and jurisdiction in all respect of said vessels in each of such proceedings".

The claimants of the vessels have heretofore filed exceptions to the libels of forfeiture, and have now also appeared and objected to the granting of the recently filed petitions, on the ground that the court is without authority to do so pending the prosecution by the Government of the libels for forfeiture; and taking the position that the present petitions are legally inconsistent with the forfeiture proceeding and that, in any event, the court should not grant the present petitions *without prejudice* to the United States as libelant, and to said libelant's forfeiture proceeding.

Counsel for the libelant in the third case (the private litigation) objects to the passage of any order by the court surrendering the possession of the vessels which would in any way prejudice the existing rights, if any, of the attaching creditor. The case has been heard on the petitions and answers without testimony as the matter appears to be one of law only. The Government bases its petition wholly on the very recent Act of Congress of June 6, 1941, which authorized and empowered the President, through a designated governmental agency "to purchase, requisition, for any period during such emergency, charter or requisition the use of, or take over the title to, or the possession of, for such use or disposition as he shall direct, any foreign merchant vessel which is lying idle in waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone, and which is necessary to the national defense". The Act provides that just compensation shall be determined and made to the owner or owners of any such vessel in accordance with the provisions of section 902 of the Merchant Marine Act of 1936, as amended, 46 U.S.C.A. § 1242; that such compensation shall be deposited with the Treasurer of the United States, and the fund so deposited shall be available for the payment of such compensation, "and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States, or of any State, subsisting at the time of such requisition or taking of title or possession; the holder of any such claim may commence within six months after such deposit with the Treasurer and maintain in the United States District Court from whose custody such vessel has been or may be taken or in whose territorial jurisdiction the vessel was lying at the time of requisitioning or taking of title or possession, a suit in admiralty according to the principles of libels in rem against the fund, which shall proceed and be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties;"

Section 2 of the Act provides that funds appropriated by the Act of March 27, 1941, Public Law 23, c. 30, 77th Congress, 55 Stat. 53, are made available to carry out the provisions of section 1 just above referred to.

Section 902 of the Merchant Marine Act, now codified as section 1242 of the Shipping Act, 46 U.S.C.A. § 1242, provides in substance that when vessels are taken by the Maritime Commission, but the ownership thereof is not required by the United States, "the Commission, at the time of the taking or as soon thereafter as the exigencies of the situation may permit, shall transmit to the person entitled to the possession of such property a charter setting forth the terms which, in the Commission's judgment, should govern the relations between the United States and such person and a statement of the rate of hire which, in the Commission's judgment, will be just compensation for the use of such property and for the services required under the terms of such charter." If the charter is not accepted as tendered the Commission shall pay on account 75% "of such rate of hire as the same may from time to time be due under the terms of the charter so tendered, and such person shall be entitled to sue the United States to recover such further sum as added to said 75 per centum will make up such amount as will be just compensation for the use of the property and for the services required in connection with such use. In the event of loss or damage to such property, due to operation of a risk assumed by the United States under the terms of a charter prescribed in this subsection, but no valuation of such vessel or other property or mode of compensation has been agreed to, the United States shall pay just compensation for such loss or damage, to the extent the person entitled thereto is not reimbursed therefor through policies of insurance against such loss or damage."

Subsection (d) provides that "in all cases, the just compensation authorized by this section shall be determined and paid by the Commission as soon as practicable", and the claimant may sue for the balance of just compensation over the 75% paid in the manner provided for by sections 41(20) and 250 of title 28 U.S.C.A. The latter statutes provide for suits under the Tucker Act, in the Court of Claims or in the United States District Court up to $10,000.

At the oral argument of the case the question occurred to me whether, in view of the fact that the vessels were being taken from the possession of the court which had acquired proper jurisdiction over them for the purposes of the several suits, the provisions for the determination of the amount of compensation and the security therefor were adequate and sufficient under the fundamental constitutional provision of the 5th Amendment with regard to securing just compensation for private property taken for public use. However, the objections of the claimants of the vessels were not put or argued upon this ground, and in my opinion the rights of the attaching creditor in the private suit can be sufficiently protected by the form of order to be passed in the cases. The taking under the Act of June 6, 1941, is analogous to the immediate taking by the Government of lands in ordinary condemnation cases. See 40 U.S.C.A. § 258a, and recent opinion of this court thereon reported in United States v. Certain Parcels of Land in Prince George's County, Md., 40 F.Supp. 436. The provision is also analogous to the special statute under which lands were taken at Quantico, Virginia, during the 1917 war. See United States v. McIntosh, D.C., 57 F.2d 573; Id., D.C., 2 F.Supp. 244; Id., D.C., 3 F.Supp. 715; McIntosh v. United States, 4 Cir., 70 F.2d 507.

■ The argument of counsel for the claimant of the vessels is, as previously indicated, that the court having assumed jurisdiction must retain the custody of the vessels by the marshal of the court unless they are released to the claimant on stipulation or bail or sold by order of the court. And emphasis seems to be placed on the contention that because the Government has filed libels for forfeiture it may not now take the property for purposes of public defense under the Act of 1941; or at least the present surrender of the vessels should be treated as an abandonment by the Government of its claim to ownership by forfeiture; and it should now be determined by the court that if the Government takes the vessels it must recognize the ownership of the claimant so that the just compensation for the vessels must be paid to them. Or, in other words, that the order of the court surrendering possession should not be "without prejudice to the claims of the Government for forfeiture". It is pointed out for the claimant that the statutes of the United States and practice in admiralty do not permit the surrender of a libelled ship to the libelant except after formal decree of condemnation; and the analogous proceedings for forfeiture of other property are generally to the same effect. This may be conceded, but I do not think it at all follows that the Government may not take or

condemn for public use property in the possession of the court provided just compensation is made therefor or sufficiently secured. Perhaps it would be desirable in the case of such a taking, that the determination of just compensation, a judicial question, should be made by the court from whose possession and jurisdiction the property is taken. But this question is not necessarily now involved.

■ Nor is there any sufficient basis for conditioning the order by requiring the Government to abandon its claim for forfeiture. The substantial effect of the Act of June 6, 1941, is that the just compensation when finally determined stands in lieu of the property itself, either as to the capital value thereof, in cases where the whole property is taken, or the reasonable hire thereof where only a temporary use is required. The ultimate award of just compensation so determined will be subject to the appropriate orders of court dependent upon the outcome of the litigation. It is not now necessary to determine whether the present taking in legal effect amounts to an abandonment by the Government of its forfeiture claim. Similarly the claim of the private libelant in the third case will simply be shifted from the vessel itself to the fund *pro tanto,* and the realization thereof will depend upon the establishment or defeat of the claim which, if any, is secured by the attachment. It will be understood, of course, that all questions are reserved as to whether the forfeiture claim if established will take priority over the attachment or vice versa.

■ There is one further point that should be taken care of in the order to be passed. The extent of the taking by the Commission, and the time of the setting aside of the specific amount of just compensation for the taking, are left indefinite by the action of the Commission. In its resolution attached to the present petitions the Commission, after reciting its authority in the premises, simply states that it does "take over the possession and use of the aforesaid vessels, including all tackle, apparel, furniture, spare parts, gear and equipment, and all stores and supplies, including fuel aboard such vessels, subject to the terms and conditions of the taking, use and disposition of the vessels, hereinafter referred to, all without prejudice to the rights of the United States under any executive seizure of or forfeiture proceedings against such vessels, or any thereof,

heretofore or hereafter effected or instituted". And the Commission further resolved that its general counsel was authorized and directed to prepare and submit to the Commission for its approval, a statement of the terms and conditions of the taking, use and disposition of the vessels. The Commission further resolved that the appraisal committee was authorized and directed to determine the compensation to be paid the respective owners of said vessels in accordance with the provisions of the Act approved June 6, 1941, and to submit its recommendations with respect thereto to the Commission.

In order to give certainty and further definition to the terms of the taking, I consider it only reasonable that the Commission should file with the court within thirty days, or such further time as may hereafter be allowed in extension thereof, a definite statement, of the nature recited in the resolution to be prepared by its counsel, so that the court and the parties in interest may be informed of the terms and conditions affecting the extent of the taking, and the amount of just compensation therefor as estimated by the Commission, and in accordance with the requirements of the statute to be deposited with the Treasurer of the United States as a fund to stand in lieu of the vessels themselves or a reasonable hire thereof. It is also the definite understanding of the court that at the conclusion of the use of the vessels by the Government they must be restored to the jurisdiction of the court in as good condition as when received, ordinary wear and tear excepted, and failing that, the United States assumes the obligation to reimburse the proper owners or claimants, other than itself, for loss and damage to the ships not compensated for by insurance. I clearly understood counsel for the Government to concur in this understanding of the effect of the Act of 1941.

■ The form of order submitted by counsel for the Government provides that jurisdiction of the court shall continue over the vessels during the use by the United States, and that the marshal of the court is authorized to appoint the masters of the respective vessels as deputy marshals for the sole purpose of technically continuing the jurisdiction of the court and provide, so far as possible, for the ultimate restoration of the vessels to the possession of the marshal in accordance with the several admiralty cases. This particular form of order is pat-

terned upon a somewhat analogous proceeding arising during the war of 1917 which received at least the qualified approval of the Supreme Court in the case of In re Whitney Steamboat Corp., 249 U.S. 115, 39 S.Ct. 192, 63 L.Ed. 507. See, also, The Kaiser Wilhelm II, 3 Cir., 246 F. 786, L.R.A.1918C, 795.

I have accordingly signed an order in the cases following the general form of that submitted by the Government but with some further clarification.

Upon consideration of the petitions for the temporary possession of the ships mentioned in these proceedings filed by the United States on October 6, 1941, and upon motion of Bernard J. Flynn, United States Attorney for the District of Maryland, and after hearing counsel for the parties in interest, it is ordered that the prayer of the petitions be granted, and that the Marshal of this court and the Collector of Customs for this district comply with the said notice of taking served upon them by the United States Maritime Commission as required by and for the purpose stated in the Act of June 6, 1941; provided, however, that this order and all action taken pursuant thereto shall be without prejudice to the continued jurisdiction of this court over said vessels, the court at all times retaining the custody and jurisdiction of said vessels in each of said proceedings.

It is further provided that this order is entered without any prejudice to the rights of the United States, if any, to prosecute the forfeiture proceedings now pending in this court against said vessels, or the rights of the owners or any lienors to assert any valid defense which they, or any of them, may have to said forfeiture proceedings, including such right as the owners or lienors may have to contend that the institution of the requisition proceedings against said vessels is a waiver of the right to forfeiture, and without prejudice to the claim, if any, of the libelant in Admiralty No. 2490, in this court or to the question, which is not now decided, as to whether, if such libelant's claim is established, it has priority over or is subject to the claims for a right of forfeiture asserted by the United States, if established.

And it is a further condition of this order that the United States Maritime Commission shall, within thirty days hereafter, or such extension of such time as may be hereafter ordered by the court, file in this court a definite statement of the terms and conditions on which the taking of said vessels are predicated and its estimate of the just compensation to be paid therefor, to be deposited with the Treasurer of the United States, all in accordance with the Act of June 6, 1941.

The order is also made on the understanding that in accordance with the Act of June 6, 1941, the United States assumes the obligation not only to pay just compensation for the use of the said vessels but also to pay just compensation to the proper owners as their claims may be established hereafter for any loss, damage or injury to said ships occurring while in the possession of the United States (ordinary wear and tear from use excepted) not compensated for by insurance.

And it is further ordered that the Marshal of this court be and he is hereby permitted to appoint the masters or other persons having the custody of the said vessels, and their successors in such custody, as Special United States Marshals; and that the said vessels in such custody be turned over by him to the United States Maritime Commission for the purposes of said requisition; and that the said Special Deputy Marshal or his substitutes remain always in possession of the vessels for and in behalf of the United States Marshal, and that the said vessels be returned to the custody of the Marshal of this court upon being released from said requisition or taking by the United States Maritime Commission.