UNITED STATES v. NINE BARRELS OF BUTTER.

(District Court, S. D. New York. April 9, 1917.)

Food ⬤⚏24—Condemnation—Impurities—"Renovate"—"Ladling."

In an action for the destruction of butter, shipped in interstate commerce, which contained impurities, and a portion of which had become rancid, the claimant will be allowed to "renovate" the butter—that is, to melt it to a fluid, so that all solid matters fall to the bottom, and then strain and blow it into a spray, in which condition hot water is allowed to percolate through the oil, after which the water is drawn off and an emulsion made with milk, cooled into crystals, and packed, under a bond that, after renovating, the butter will be submitted to inspection, and destroyed if the renovation has not removed the impurities and the rancid oils—but will not be permitted to cleanse the butter by the process known as "ladling," which consists merely in picking out with a trowel such parts as show impurities to the eye, and then molding it into pats and coloring it for sale to bakers.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 17.

For other definitions, see Words and Phrases, Second Series, Renovate.]

At Law. Action by the United States for the condemnation and destruction of nine barrels of butter claimed by the New York Butter Packing Company. Order entered permitting claimant to attempt to renovate the butter under bond.

This is an action at law for the destruction of nine barrels of No. 2 grade packing butter shipped from Nashville, Tenn., to New York, and consigned to the claimant, New York Butter Packing Company. The butter was packed in nine barrels, stout and double-headed, except two, which were covered on one end with burlap. When examined in New York, they disclosed the presence in substantial quantity of dirt, feathers, paper, aniline dyes, which ran from the paper, the excrement of rats, and cheesy particles, as well as a substantial volume of the butter gone rancid. The claimant depends for its defense upon two theories: First, that the title to the butter had passed to it at Nashville, Tenn., on or before the date of its delivery to the carrier, a fact which was conceded; second, that the butter was destined for retreatment, by which most of the impurities were removed. This retreatment is known as "ladling," and consists in dividing the butter into small portions, a pound or more in size, and in manually picking out with a trowel such parts as show dirty to the eye of the operator. The amount so removed varies generally from 2 to 5 per cent., but sometimes rises much higher. The butter thus cleansed is then put into a room at about 85° F., which makes it plastic and capable of being molded into pats of proper size and homogeneous quality. It is then colored evenly and sold only to bakers. In baking, the butter passes through a temperature of from 350° to 500° F., under which most of the rancid oils are volatilized and driven off. Under the evidence as given, it must be assumed that the butter so used by bakers is not deleterious to the public health.

Katz & Sommerich, of New York City, for claimant.

H. Snowden Marshall and Joseph A. Burdeau, both of New York City, for the United States.

LEARNED HAND, District Judge (after stating the facts as above). The first point of the claimant is met and answered by the case of Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, and needs no other discussion. In that case the eggs had been shipped by Clark & Co. to themselves, and were in storage at the time in question. That case was stronger for the claimant than the case at bar.

The second point is in fact also decided by the same case, which was almost precisely like this in that aspect. Doubts may arise, where goods are shipped in interstate commerce, which may or may not be articles of food, as their ultimate destination may determine; but this case does not raise them. By no chance can this butter be called anything but an article of food; by no chance can I avoid the conclusion that it was filthy and decomposed in part. As such it came within the terms of the statute, even though it might be saved and reclaimed by being made clean and palatable. Questions of that sort arise under section 10, and under that alone. Under that section I have the power to destroy, sell, or redeliver to the owner under bond. The conditions of redelivery, therefore, become the important question in the case. I may deliver the goods to the owner, upon condition that they "ladle" the butter, or that they otherwise treat it so as to secure the health of the community, in either case subject to a bond.

As to "ladling," I shall not allow the butter to be so treated. Cer-

tainly some filth must remain, and, while baking may remove any injury to health, the question is somewhat meagerly presented, and the claimant does not press its right to do so. There is, however, another and much more radical method of cleansing such butter, known as "renovating," which is as follows: The butter is melted to a fluid, so that all solid matters fall to the bottom. It is then strained and blown into a spray, in which condition hot water is allowed to percolate through the butter oil. The water is then drawn off, and an emulsion made with milk is then cooled into crystals, salted, and packed in containers. As such it is sold for table butter, and in many instances is unquestionably a useful article of food, and is permitted access to the markets, where it is not unlawful.

I shall allow this butter to be "renovated" by the process mentioned, and after renovation the plaintiff shall have opportunity to examine it, and, if it will not pass it, to convince me that it is still filthy or decomposed, and should be destroyed. Therefore the decree will be that the butter be destroyed, unless the claimant elects within five days to "renovate" the same, upon giving suitable security as hereinafter described. If it does so decide, the butter shall be delivered to said claimant, and after renovation, to be completed within a suitable time, shall be again submitted to the plaintiff for examination. If the plaintiff at that time is not satisfied with its purity, it may apply to this court for a writ of destruction, notwithstanding delivery to the claimant. The claimant shall give a bond in the sum of $2,000, conditioned that it will renovate said butter within a time to be fixed, and will submit the product to the plaintiff for inspection, and further conditioned that it will satisfy the court of the identity of the renovated butter with the subject of this action, and will hold such renovated butter subject to any writ of destruction to be hereafter issued.

If a writ of error is taken, the claimant's option to renovate may be exercised notwithstanding the same, but the bond must extend to the determination of the appeal, in which case no writ of destruction will issue until that time.

The claimant will bear the costs under section 10.