## UNITED STATES v. 893 ONE–GALLON CANS, MORE OR LESS, etc., LABELED BROWN'S INHALANT.

### No. 1529.

District Court, D. Delaware.

May 26, 1942.

468

Stewart Lynch, U. S. Atty., and William Marvel, Asst. U. S. Atty., both of Wilmington, Del., for the Government.

Harold B. Howard, of Wilmington, Del., for Alvin J. Timmons and others.

LEAHY, District Judge.

A libel was filed which sought seizure and condemnation of certain cans containing poultry medicine. The articles were shipped from Pennsylvania into Delaware. The libel charges misbranding of the product within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938.[1] The Marshal made seizure. The claimants, who were in possession of the articles, filed an answer denying the property was misbranded. The manufacturer, Edgar W. Brown, an individual engaged in business under the name of "Brown's Poultry Products Co.", in Lancaster, Pennsylvania, was permitted to intervene on May 21, 1942, to defend the labeling on his own behalf. In the order permitting the intervention, there was a provision directing that the property be discharged from seizure and delivered to the claimant upon the claimant's filing bond; and that the claimant should not sell said property unless and until the labels were removed. The reason offered to the Court, in support of such procedure, was that it was admitted the contents of the cans were not deleterious and that merely the labels came within the prohibition of the statute. On May 26, 1942, the Government moved to amend the precipitous order of May 21, 1942, by striking out those portions which permitted a return of the seized property.

In opposing the Government's motion, both the manufacturer and claimant assert that as this is a cause in Admiralty, they should be allowed to have possession of the property before final hearing and decree by filing an appropriate bond in view of the fact that the statute provides that the procedure under Section 334(b) "shall conform, as nearly as may be, to the procedure in admiralty;  *  *  * ". Especially is this so in view of the fact that the Government admits, they argue, the contents of the cans are not harmful. The Government contends that there can be no release of seized property under the statute until "after entry of the [final] decree"[2] of condemnation. A search discloses no decision dealing with the precise question raised.

Section 334 (b) does state that the procedure "in cases under this section shall conform, as nearly as may be, to the procedure in admiralty". The argument of the

[1] 21 U.S.C.A. § 352(a).

[2] 21 U.S.C.A. § 334(d): "Any food, drug, device, or cosmetic condemned under this section shall, after entry of the decree, be disposed of by destruction or sale as the court may, in accordance with the provisions of this section, direct and the proceeds thereof, if sold, less the legal costs and charges, shall be paid into the Treasury of the United States; but such articles shall not be sold under such decree contrary to the provisions of this chapter or the laws of the jurisdiction in which sold: Provided, That after entry of the decree and upon the payment of the costs of such proceedings and the execution of a good and sufficient bond conditioned that such article shall not be sold or disposed of contrary to the provisions of this chapter or the laws of any State or Territory in which sold, the court may by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter under the supervision of an officer or employee duly designated by the Administrator, and the expenses of such supervision shall be paid by the person obtaining release of the article under bond. Any article condemned by reason of its being an article which may not, under section 344 or 355, be introduced into interstate commerce, shall be disposed of by destruction".

claimants that the application of the Admiralty Rules, 28 U.S.C.A. following section 723, should control the procedure as to release of seized products finds no support when we examine the Admiralty Rules. Rule 11 deals with release of perishable goods. Obviously this rule can hardly apply to nonperishable goods seized under Section 334(d). Rule 12 relates to the release of a vessel to the claimant upon the filing of bond to protect the claim of libellant.[3] Hence, it appears that there is no apposite Admiralty Rule or traditional practice upon the basis of which goods may be released prior to decree of condemnation.

■ The legislative history of the present statute throws some light on the procedure intended by Congress. If we turn to Section 10 of the Federal Food and Drugs Act of 1906,[4] it likewise appears that the release and delivery of the articles to the owners is only after the entry of a decree of condemnation.[5] The language of the various bills considered by Congress from 1933 to 1937 remained unchanged with respect to the release of articles and the giving of bond.[6] The various Senate Reports as well as the hearings had on the several proposed bills make it manifest to me that Congress understood the procedure looked to the entry of a decree of condemnation before release of the seized articles.[7]

■ Not only is the legislative history of Section 304 helpful in determining its meaning, but a mere examination of the statute makes it clear that (1) an article may be proceeded against by libel when it is adulterated or misbranded; (2) once such an article is seized the issue of adulteration or misbranding must be determined by the

---

[3] For an analogous situation, involving seizure of a vessel for forfeiture, see The Pietro Campanella, D.C., 41 F.Supp. 656, 659, where the court said: "It is pointed out for the claimant that the statutes of the United States and practice in admiralty do not permit the surrender of a libelled ship to the libelant except after formal decree of condemnation; and the analogous proceedings for forfeiture of other property are generally to the same effect."

[4] 21 U.S.C.A. § 14: "* * * seized for confiscation by a process of libel for condemnation. And if such article is condemned as being adulterated or misbranded, or of a poisonous or deleterious character, within the meaning of this Act [sections 1 to 15, inclusive, of this title], the same shall be disposed of by destruction or sale, as the said court may direct, and the proceeds thereof, if sold, less the legal costs and charges, shall be paid into the Treasury of the United States, but such goods shall not be sold in any jurisdiction contrary to the provisions of this Act [said sections] or the laws of that jurisdiction. Provided, however, That upon the payment of the costs of such libel proceedings and the execution and delivery of a good and sufficient bond to the effect that such articles shall not be sold or otherwise disposed of contrary to the provisions of this Act [said sections], or the laws of any State, Territory, District, or insular possession, the court may by order direct that such articles be delivered to the owner thereof. The proceedings of such libel cases shall conform, as near as may be, to the proceedings in admiralty, except that either party may demand trial by jury

of any issue of fact joined in any such case, and all such proceedings shall be at the suit of and in the name of the United States".

[5] Three cases decided under the 1906 statute passed upon the release of goods to claimants. In United States v. Nine Barrels of Butter, D.C., 241 F. 499 the application for release was not made until after the entry of a decree of condemnation. In A. O. Anderson & Co. v. United States, 9 Cir., 284 F. 542, it would seem the court assumed the necessity of a prior decree of condemnation, before release. In United States v. Two Cans of Oil of Sweet Birch, etc., D.C., 268 F. 866, it appeared that the claimant moved for release of the product before decree; but if I have failed to read the case correctly and the motion was made, in fact, after decree, it would seem to make little difference as the court simply held that the motion was one addressed wholly to the court's discretion and the court declined to exercise it in favor of the claimant.

Thus, no Court, as far as I have been able to find, has held specifically that release may be had before decree, or that release may only be had after decree.

[6] S. 1944, 73 Cong. 1st and 2d Sess.; S. 2800, 73 Cong. 2d Sess.; S. 2800, 73 Cong. 2d Sess.; S. 5, 74th Cong. 1st and 2d Sess.; S. 5, 75th Cong., 1st and 3d Sess.

[7] For the various Senate Reports and the hearings on the proposed bills, see Dunn, Federal Food, Drug and Cosmetic Act (1938) pp. 46, 61, 102, 206, 642, and 1263 et seq.

Court; (3) if the article is neither adulterated nor misbranded, it is released to the claimant; but (4) if it is adulterated or misbranded it may be disposed of only as provided by Section 304(d). Destruction or release may only be had after decree.

I reject the contention of the claimants that the articles may be released prior to judicial determination of whether they were misbranded. Accordingly, the motion of the Government to amend the Order of May 21, 1942, is granted. An Order may be submitted striking out those portions of the May 21st Order which permitted a return of the seized goods.