## UNITED STATES v. 24 CANS CONTAINING BUTTER et al.

### No. 11040.

Circuit Court of Appeals, Fifth Circuit.

March 27, 1945.

Rehearing Denied May 5, 1945.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellant.

Erle Pettus, Sr., Horace C. Wilkinson, and Victor H. Smith, all of Birmingham, Ala., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Cloverleaf Butter Company is an operator in Birmingham, Alabama, under federal license, of a renovated butter factory.[1] Claiming that packing stock butter consigned to Cloverleaf was adulterated in that it consisted in whole or in part of a filthy or decomposed animal substance, the United States brought libels of condemnation under the Federal Food, Drug and Cosmetic Act of 1938.[2] Urging successfully below against condemnation under the Federal Food and Drug Act what it had urged successfully in its injunction suit against the state authorities, that the handling and use of packing stock butter was governed exclusively by the Renovated Butter Act and the regulations promulgated by the Secretary of Agriculture thereunder, and that the materials which it used in its factory were not subject to seizure, claimant obtained an order dismissing the libels. Appealing from the order, the United States, in support of its position that the Food and Drug Act does apply and the seized products may be libelled under it, points to the admitted fact that the seized stock is used as a component of renovated butter, to the language

---

[1] See Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 786, 62 S.Ct. 491, 86 L.Ed. 754, an injunction suit against condemnation by state authorities of packing stock butter, in which claimant's activities are fully set out and it was held by a divided court that the Renovated Butter Act of 1902, as amended 26 U.S.C.A.Int.Rev.Code § 2320 to 2327 excluded state action.

[2] Sec. 402(a) (3), 21 U.S.C.A. § 342 (a) (3).

of the Act which authorizes the seizure of any food which is adulterated, and to Section 321(f), Title 21, which defines food to mean "articles used for food or drink for man or other animals * * * and (3) articles used for components of any such articles." It points, too, to the opinion of this court in Re United States, 140 F.2d 19, 20, directing the district court to proceed under the libels to determine whether the seized product "is really food under the Act, and is really adulterated as alleged" and to enter its decree accordingly. Finally, it points to the holding of the majority in Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 786, 62 S.Ct. 491, 86 L.Ed. 754:

"Further, we agree with respondent's contention that there is no authority to confiscate or destroy materials under the renovated butter act. It should be noted that packing stock adulterated under the definitions of § 402 of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1046, 21 U.S.C.A. § 342, when introduced into or while in interstate commerce may be confiscated under § 304, 21 U.S.C.A. § 334 while in interstate commerce or at any time thereafter. Cf. United States v. Nine Barrels of Butter, D.C., 241 F. 499." 315 U.S. at page 163, 62 S.Ct. at page 500, 86 L.Ed. 754.

"* * * Confiscation by the state of material in production nullifies federal discretion over ingredients." 315 U.S. at page 168, 62 S.Ct. at page 502, 86 L.Ed. 754.

"* * * To uphold the power of the State of Alabama to condemn the material in the factory while it was under federal observation and while federal enforcement deemed it wholesome would not only hamper the administration of the federal act but would be inconsistent with its requirements. Whether the sanction used to enforce the regulation is condemnation of the material or the product is not significant. Since there was federal regulation of the materials and composition of the manufactured article, there could not be similar state regulation of the same subject." 315 U.S. at page 169, 62 S.Ct. at page 503, 86 L.Ed. 754.

Cloverleaf, on its part, points to the provision of the Renovated Butter Act, to the history of the renovated butter industry, and to the holding of the Supreme Court in the Cloverleaf case, that the act assumes, and, in view of the character of the industry must assume, that all packing stock from which renovated butter is made is more or less adulterated, and, therefore, the scheme of the act is to subject the finished product, rather than its ingredients, to the inspection and scrutiny of the Department of Agriculture. So pointing, it insists that if the Food and Drug Act is held to apply, renovated butter cannot be made, and that there is, therefore, such an inconsistency between the two statutes as that as to ingredients of renovated butter, the Renovated Butter Act supersedes and excludes the Food and Drug Act and its administrators. Relying heavily on the opinion of the majority of the Supreme Court in the Cloverleaf case, that Congress had, in the Renovated Butter Act, assumed for the Department of Agriculture such complete control over the field as to oust state inspection and state supervision of ingredients, Cloverleaf insists that the same reasoning which supported the decision in its favor there compels one in its favor here, leaving it as to the components of its finished product completely immune from their seizure and condemnation.

 We cannot at all agree. We accept, as we must until it is reversed, the view of the majority, that as between state and federal power, an act which does not give the Department of Agriculture the right to inspect and condemn filthy ingredients of renovated butter, has yet preempted the field as against state inspection and condemnation of such filthy substances. Nothing, however, in the opinion lends support to the view which the exigencies of its situation require Cloverleaf now to advance, that the Renovated Butter Act has pre-empted the field for the Department of Agriculture not only as against state action but as against federal action as well. The authoritative statement of the majority opinion that though the Renovated Butter Act made no provision for the seizure by the Department of Agriculture of butter stock, inspection and seizure of filthy and otherwise adulterated stock could be had under the Food and Drug Act, and, therefore, it could not be successfully claimed that filthy packing stock was immune from seizure, completely destroys appellee's position that the one federal act is exclusive of the other. Indeed, unless the statement in one of the dissenting opinions in that case that "The result of this decision is to deny Alabama the power to protect the health of its citizens without replacing such

protection by that of the federal government" is to be accepted, despite the disclaimer of the majority, it must be held that it was certainly not intended by Congress to leave packing stock butter manufacturers completely free to use in making their completed product any kind of filthy and putrid material they chose to use in the faith, the substance of things hoped for, the evidence of things not seen, that, in homely phrase, it will all come out in the wash. When the Food and Drug Act is considered in the light of its purpose to protect the public from adulterated and unfit materials, it would take the strongest kind of showing that its protective provisions had been limited not directly but by implication, and Cloverleaf, in maintaining that position here has a heavier burden than it can bear. It does, indeed, show that the renovating process is well adapted to remove all impurities, that renovated butter is good butter, that all packing stock has to be renovated, that all of it comes into the plant more or less adulterated with extraneous and deleterious substances in it, or otherwise unfit in its then condition for human food, and that if all packing stock were to be condemned because not fit for human food, no matter how slight the adulteration, the renovated butter industry could not survive. But these considerations are for Congress, and if Congress had intended to take packing stock butter out of the Food and Drug Act, it could very easily have done so either by amending the statutory definition of food to exclude materials that go into the finished product or by expressly excluding from the Act ingredients of renovated butter. Implied repeal or limitation of one act by another is never favored. It is not for the courts, unless the conflict between two acts is inescapable and compelling, to exclude from the coverage of an act matters which its terms expressly include, on the theory that another act, whose general purpose seems inconsistent has impliedly repealed or limited the act under review. Only where it is found that it is not possible for both acts to co-exist can an act be held to repeal or limit another, and then only in respect to the precise point of conflict. It certainly cannot be said that there is any fatal inconsistency between the two acts here. If Congress wanted to encourage the making of packing stock butter out of any materials that the manufacturers can get hold of in reliance on their claims that no matter how filthy the ingredients, the finished products will be pure, or the impurity can be, or will be, detected, it could, of course, take packing stock butter out of the Food and Drug Act. We find no support in the acts for a finding of a repealer by implication, indeed, we think it plain that there is no necessary inconsistency between them. What was intended by the Renovated Butter Act, and all that was intended, was that renovated butter could be made out of stock which, while not in its then state fit for human consumption, was yet not so unfit as to require its condemnation. It was not intended that renovated butter be made out of any kind of stock, no matter how filthy or putrid, in the pious hope that its filthiness and putrescence would, in the process of renovating, be purged away. Thus Congress, while authorizing the making of renovated butter, left to proper administration the supervision of the ingredients, authorizing their seizure and condemnation whenever they were of such character as to be deemed deleterious or otherwise unfit for use. The libels were wrongfully dismissed. The judgments dismissing them are reversed and the causes are remanded with directions to proceed with the libels, in accordance with our former opinion in 140 F.2d 19, and herewith.