ATTORNEY GENERAL *v.* BOARD OF EDUCATION OF THE CITY OF DETROIT.

1. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—CON-
TRACTS—CANCELLATION—ADDITIONAL COMPENSATION TO TEACHERS.
Where the contracts of the board of education of the city of Detroit with its teachers contained a provision that they might be terminated by either party by giving 30 days' notice, the action of the board in canceling existing contracts by mutual consent and entering into new ones providing for additional compensation for the remainder of the school year was not a violation of section 3, Art. 16, Const. Mich., prohibiting a municipal corporation from granting extra compensation to an employee after the service has been rendered, since the services under the new contracts had not been fully rendered. WIEST, C. J., and FELLOWS and BIRD, JJ., dissenting.

**2.** SAME—CONTRACTS WITH TEACHERS CALLING FOR COMPENSATION IN EXCESS OF APPROPRIATION VOID.

Where there was no available money in the teachers' salary fund and no appropriation had been made from which to pay additional compensation to teachers, the item having been disallowed by the board of estimates under section 13, Act No. 233, Laws of 1869, as amended, the board of education of the city of Detroit was without authority to cancel existing contracts with its teachers and enter into new ones calling for additional compensation; said action also being expressly prohibited by section 6, Act No. 65, Pub. Acts 1919, requiring an appropriation before contracts are made unless money is available for the purpose.

**3.** SAME — ADDITIONAL COMPENSATION PROVIDED FOR IN VOID TEACHERS' CONTRACTS MAY NOT BE PAID.

Since said contracts were unlawful, the additional compensation therein provided may not be paid from surplus primary school money for the following year, or available funds from any source.

Appeal from Wayne; O'Brien (Patrick H.), J., presiding. Submitted October 17, 1923. (Docket No. 16.) Decided December 19, 1923.

Bill by Merlin Wiley, attorney general, on the relation of James' Couzens, mayor of Detroit, and others against the board of education of the city of Detroit and another to enjoin the payment of certain moneys. From a decree for plaintiff, defendant board appeals. Affirmed.

*Andrew B. Dougherty,* Attorney General, and *Clarence E. Wilcox* and *Edmund Atkinson,* for plaintiff.

*Donnelly, Hally, Donnelly & Munro,* for appellant.

McDONALD, J.    This is an appeal by the board of education of the city of Detroit from a decree of the circuit court of Wayne county. The litigation arises from an attempt of the board to pay its teachers a

so-called "bonus" or additional salary. The board of education of the city of Detroit consists of seven elective members. The mayor, city treasurer, recorder and controller are *ex-officio* members without the right to vote. The mayor has the power of veto over the proceedings of the board, whereby any debt or liability may be created. At its meeting on the 18th of December, 1919, the school board adopted a resolution authorizing the payment of a bonus of $50 a month to its teachers, beginning on January 1, 1920. This resolution was vetoed by the mayor and passed over his veto. To carry out the resolution an appropriation of $920,000 was requested of the board of estimates, which body refused the appropriation on the 9th day of April, 1921. It does not appear that any further action was taken with reference to the resolution of December 18, 1919. But on the 25th of March, 1920, another resolution was adopted which provided in part,

"That each teacher who has been in the employ of the board of education since January 2, 1920, be paid a sum of $300 in addition to the amount called for in their present contract, payment to be made on or before August 1, 1920, out of the primary school fund or any other funds available for the payment of teachers' salaries, provided that the said teacher remains in the employ of the board of education until June 25, 1920; and provided also that if such teacher has been paid a bonus, the said $300 payment shall be reduced by the amount of bonus received since September 2, 1919."

On July 22, 1920, the board adopted a pay roll in the sum of $718,654.84 for the payment of the bonus authorized in the resolution of March 25, 1920. This action of the board was vetoed by the mayor and passed over his veto. When the pay roll was transmitted to the controller he refused to honor it. No further action was taken until January 13, 1921, at which time the pay roll for $718,654.84 was with-

drawn and a new one for $359,327.42 was prepared. This pay roll was sent to the controller on February 8, 1921.   On his refusal to honor it the board filed a petition in the circuit court for a writ of mandamus requiring him to draw his warrant on the city treasurer for the amount of the pay roll.   Before a hearing was had on the petition, the attorney general, on relation of James Couzens, the mayor, and the individual members of the common council, filed this bill in chancery for an injunction restraining the board of education from attempting to enforce its resolution of March 25, 1920, and restraining the controller from drawing his warrant on the treasurer for the payment of the pay roll in question.   Issue was joined in both actions, and as the same question is involved in each, by agreement of the parties they were heard together. The circuit judge denied the petition for a writ of mandamus and granted the injunction asked for by the plaintiffs.   The appeal to this court is from the decree in chancery only, the parties having stipulated that the opinion of the court on this appeal shall control the issue in the mandamus proceedings.

The following questions are involved:

(1) Is the resolution of March 25, 1920, a violation of section 3 of article 16 of the Constitution of Michigan of 1908, which provides that "neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered, or the contract entered into?"   *   *   *

(2) Assuming that the resolution in question does not violate the foregoing constitutional provision, Has the board of education the power and authority to pay the amounts contemplated by said resolution, there having been no appropriation made therefor?

The learned circuit judge was of the opinion that the resolution of March 25, 1920, is a violation of the foregoing provision of the Constitution.   In this, we

think he was in error. The constitutional provision in question reads as follows:

"Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered or the contract entered into. Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

It will be observed that this section is divided into two parts; the second part which deals with the increase or decrease of salaries of public officers has no application to the question under consideration. A teacher is not an officer, or agent, but is an employee. The board of education is a municipal authority. With these facts in mind so much of the first part of the section as here applies may be paraphrased to read as follows: The board of education shall not grant or authorize extra compensation to any teacher after the service has been rendered. The question therefore is, Did the resolution of March 25, 1920, authorize extra compensation to teachers for services after they had been rendered? If it did it is a violation of the constitutional provision above quoted. When this resolution was passed the board of education had written contracts with its teachers at definite salaries, for the school year of 1919-20, but the contracts could be terminated by either party upon giving 30 days' notice. The resolution recites that many teachers were taking advantage of this provision of the contracts and were resigning to obtain more remunerative employment. To overcome this loss in its teaching force, the board proposed that the existing contracts should be canceled by mutual consent and new contracts entered into providing for $300 additional compensation, on condition that the teachers remain in the employ of the board until the close of

225—Mich.—16.

the school year on June 25, 1920. This is substantially what the resolution of March 25, 1920, authorized. At that time the services contracted for had not been fully rendered. Three months of the school period remained. For the services to be rendered during the latter period new contracts providing for increased compensation were entered into. There could be no additional compensation allowed for services performed under the original contracts, but there is no constitutional obstacle in the way of canceling the contracts or changing them at any time, and allowing an increase in salary for the balance of the term. The only thing the board may not do is to grant additional compensation after the services have been rendered. The services affected by the resolution of March 25, 1920, had not been rendered at the time of its passage. It purports to cover services to be rendered. The teachers had a right to quit the service of the board at any time. The board had a right to say, "if you give up your rights under your contract and agree to remain for the full school year, we will make a new contract to pay you an increased salary." As the additional compensation was for services to be performed under new contracts for the balance of the school year, we think it does not violate the provision of the Constitution which prohibits a municipal authority from granting additional compensation for services after they have been rendered.

2. Assuming that the resolution in question does not violate the foregoing constitutional provision, has the board of education the power and authority to pay the amounts contemplated by said resolution, there having been no appropriation made therefor?

The board of education has no power of appropriation or taxation.

"Its annual budget shall be prepared at the same time and in the same way as the city's budget and shall

be submitted to and considered by the same board or officers." Section 4, Act No. 65, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 5870 [54]).

"It shall be the duty of the board of education to transmit to the common council through the city controller on or before the first day of February of each year, or at such other time as the common council may by ordinance prescribe for the submission of annual estimates, an estimate of the amount of money which said board may deem necessary for the proper maintenance of the public schools of the city during the fiscal year next ensuing, which estimates shall, so far as practicable, be made in detail, specifying the amounts required for salaries of teachers and other employees of the board, repairs, fuel, supplies and general current expenses, all of which estimates shall be classified as the 'Maintenance Fund.' * * *

"So much of said estimates as the common council and board of estimates of the city of Detroit shall approve, shall be levied and collected the same as other city taxes; and it shall be unlawful for said board of education to pay out or agree to pay out any monies for any item or items disallowed by said common council or board of estimates; *Provided, however,* That the amount so approved for the maintenance fund shall not be less than the sum of five dollars for every child in the city between the age of five and twenty years, as the number thereof may have been ascertained by the last school census." * * * Section 13, Act No. 233, Laws of 1869, as amended by Act No. 392, Local Acts 1903.

In submitting its annual budgets in compliance with this statute, it has always been the custom of the board of education to include an item for expected receipts from the primary school interest fund. From the total sum required for the maintenance of the schools for the ensuing fiscal year, the amount expected from the primary school fund is deducted and the balance is raised by taxation. The fiscal year of the board of education is the same as that of the city; it begins on July 1st. The resolutions of De-

cember 18, 1919, and of March 25, 1920, were passed during the fiscal year beginning July 1, 1919. Each provided for the expenditure of the same amount, viz.: $718,654.84. Money is raised only for each fiscal year and for that year no appropriation had been made for extra compensation to teachers, and there was no money on hand then or at any time during the year with which to pay it. After the payment of additional compensation had been voted by the board of education, an attempt was made to secure an appropriation, but the board of estimates refused it. The expected receipts from the primary school fund for that year had been overestimated and there was no money from that fund or from any other source with which to meet the obligation incurred by the resolution. There being no money available for that purpose and no appropriation therefor, the action of the board in authorizing additional compensation was unlawful. Section 6 of Act No. 65, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 5870 [56]), reads as follows:

"It (the board of education) may authorize a contract for work or services before the money is available, if an appropriation or an authorization of bonds has been made for it and may after an appropriation or an authorization of bonds has been made, authorize its financial officers to borrow, on the best terms obtainable on the credit of such appropriation or authorization of bonds, any sums necessary to make any payments demanded by said contracts."

It is the policy of the law that when no money is available municipal corporations may not contract for services or work unless an appropriation has been made therefor. The purpose is apparent; and the wisdom of such a restriction is well illustrated by the action of the board of education in this case. When it incurred an obligation for the payment of $718,654.84 to its teachers every fund that could be

used for that purpose had been exhausted. There was a deficit of $860,000 in the teachers' salary fund, and as the primary school money had been over-estimated to the extent of $196,649.45, there was a deficit of that amount in that fund. Until these amounts were provided by the city there was not sufficient money available to maintain the schools for the entire school year. In the face of this large deficit and with no money on hand or in prospect, the board made new contracts with its teachers incurring thereby an additional obligation of $718,654.84. It was just such a situation that the legislature sought to prevent by section 6 of Act No. 65, Pub. Acts 1919, which requires an appropriation before contracts are made unless money is available for the purpose, and by section 13 of Act No. 233, Laws of 1869, as amended, wherein the board of estimates was given power to disallow items submitted by the board of education for maintenance of the schools.

It is claimed, however, by counsel for the board of education that payment of the additional compensation can be made from the primary school fund, for which no appropriation is necessary. The amount of the primary school fund received in the fiscal year in excess of the amount estimated by the board of estimates might undoubtedly be so used if at the time the resolution was passed there had been any such surplus on hand or in sight. In this case, instead of there being any surplus in that fund, there was a large deficit, but it so happened that for the year following the expected receipts from the primary school fund were under-estimated, so that, in 1921, there was a surplus sufficient to pay in part the obligation incurred for increased salaries for the year 1919. It is with this surplus that the board proposes to meet the pay roll in question. We think in the circumstances of this case it may not be so applied. As the contracts were

unlawful, obligations arising thereunder may not be paid with available funds from any source.

The decree of the circuit court is affirmed, without costs.

CLARK, SHARPE, MOORE, and STEERE, JJ., concurred with McDONALD, J.

FELLOWS, J.   I agree with Justice McDONALD in the conclusion he reaches and with what he says on the second question, but I am persuaded that the canceling of the old contracts shortly before they expired and the execution of new ones with additional compensation was so palpable an attempt to circumvent the constitutional provision as to bring the case within the holding of this court in *Kearney* v. *Board of State Auditors*, 189 Mich. 666.

WIEST, C. J., and BIRD, J., concurred with FELLOWS, J.