**ELLIS v. CATES.**

No. 5984.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 16, 1949.

Decided Dec. 20, 1949.

John Locke Green, Arlington, Va. (Alfred W. Trueax, Arlington, Va., on brief), for appellant.

Fred W. Smith, Attorney, Department of Justice, Washington, D. C. (A. Devitt Vanech, Assistant Attorney General; George R. Humrickhouse, U. S. Attorney, Richmond, Va., and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on brief) for appellee.

Before PARKER, Chief Judge, and SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal from a summary judgment for defendant in an action by the Receiver of the Quantico Company against Clifton B. Cates, Commanding General in charge of the Marine Corps Base at Quantico, Virginia. The action was one in ejectment and sought recovery of the identical lands which had been claimed by Receivers of the Quantico Company in a prior action and which had been adjudged to be the property of the United States in a subsequent suit instituted to quiet title and enjoin that litigation. See United States v. McIntosh, D.C., 57 F.2d 573, and D.C., 2 F.Supp. 244, rehearing denied D.C., 3 F.Supp. 715, appeals dismissed by this court 70 F.2d 507. The lands, which had been leased to the United States, had been subsequently acquired by the United States under condemnation proceedings

pursuant to the Act of July 1, 1918, 40 Stat. 704, 724, 738, and the Quantico Company had been duly paid the amount to which it was entitled thereunder. All of this was fully established in the prior litigation; and judicial notice thereof was properly taken by the trial judge in the court below on the motion for summary judgment. The facts are thus stated in the opinion of Judge Chesnut, 2 F.Supp. at page 250:

"The act of Congress of July 1, 1918, ch. 114, 40 Stat. 704, 724, was passed while the government of the United States was at war with Germany and Austria. It authorized the President to take over immediately title to about 5,000 acres of land at Quantico, Va., as a Naval Post for the Marine Corps; and authorized the President to determine the just compensation to be paid to the owners, to be paid immediately if satisfactory to them, otherwise 75 per cent. of the amount to be paid at once with leave to them to sue in the Court of Claims, or, if the amount was not more than $10,000, in the appropriate United States District Court. The act further provided that the title in fee simple should vest immediately and absolutely in the United States upon the taking.

"The procedure in carrying out the act was as follows: Upon the recommendation of the Secretary of the Navy, the President signed a proclamation taking over title to the lands and authorizing the Secretary of the Navy to notify the owners that they must vacate within thirty days, and that they should present their claims for just compensation to a board constituted by the Secretary of the Navy to determine the amounts. The landowners were given the opportunity to present their claims in person or by counsel and submit evidence of value to this board. And the numerous claimants generally did so. The board determined the respective values, of which the landowners were notified, and the Secretary of the Navy approved the findings. With respect to the four landowners here involved, all acquiesced in the taking of their lands, and three ultimately accepted the amounts so determined by the President as just compensation in full satisfac-

tion. In the McIntosh case the landowner accepted 75 per cent. of the amount so determined, and sued in the Court of Claims for the balance, and, after obtaining judgment therein, accepted the amount of the judgment without appeal."

After noting the objections made to the proceedings, Judge Chesnut said 2 F.Supp. at page 251:

"These objections have been urged by counsel for the defendants in elaborate oral and written arguments, and are sought to be supported by very many judicial precedents. The questions raised are interesting and important; but after study of the authorities, I think there is no doubt that title to the land was validly acquired by the government from these landowners under the authority of the act and the procedure taken thereunder."

After an elaborate review of the authorities supporting his view as to the validity of the condemnation, Judge Chesnut held that, irrespective of its validity, the parties were estopped to question the government's title by reason of their having accepted the amounts awarded them as compensation, saying, 2 F.Supp. at pages 253–254:

"Even if there were some legal invalidity in the act or some irregularity in the procedure thereunder for taking the property, each and all of the defendants are clearly estopped by their conduct to deny that the government has good title to the lands. Two of the landowners, the Quantico Company, and the County School Board of Prince William county, accepted the amount of the awards as just compensation and contemporaneously gave to the government receipts and releases in which they recited in effect that the taking was valid and effective in pursuance of the act, and expressed themselves as fully satisfied with the payment made."

Notwithstanding the decree rendered in that case adjudging the title in the lands to be in the United States and enjoining the receivers of the Quantico Company from proceeding with the ejectment action which they had instituted in the Virginia courts, this action was instituted in the court below to eject the Commanding Gen-

eral at the Quantico Marine Base from the lands title to which had been there adjudicated. The complaint alleges that on July 1, 1918, the Quantico Company was the owner of the lands, that there was a "legislative contract" for their sale to and purchase by the United States; that this contract was never carried out; and that the United States, having entered into possession as lessee of the Quantico Company, held possession subsequently as lessee. The answer, while admitting that the original ownership of the lands was in the Quantico Company and that the United States had originally entered into possession as lessee, pleaded that title and possession were now in the United States and set up the proceedings in the suit to quiet title as res judicata on that question. There were pleas, also, of the 15 year statute of limitations and of the fact that the defendant named had ceased to be the Commanding General of the Quantico Base and was no longer in possession of the property sued for.

By failure to answer requests for admissions of fact, defendant admitted that the United States entered into possession of the lands originally under a contract of lease, that it had never paid anything for the lands except $267,477 on September 4, 1919, that it had never received any deed of conveyance from the Quantico Company, that it had never served notice in writing on that company of intention to terminate the lease and that the defendant, Commanding General, had no title to or interest in the land, his authority for entering on same being founded on an order in writing from the United States. The plaintiff thereupon made a motion for summary judgment based on the pleadings and admissions and certain affidavits; and the defendant made a motion for summary judgment on the ground that there was no issue of fact as to the matters relied on as a defense. Plaintiff has argued here that no such motion by defendant was filed; but we have examined the original papers in the case and find the motion properly indorsed by the clerk as having been filed on May 18, 1949, well in advance of the hearing.

The trial judge, Hon. Don Gilliam, denied the plaintiff's motion for summary judgment and granted that of defendant on four grounds: (1) that title to the lands in question had been validly acquired by the United States by virtue of the condemnation proceedings, (2) that plaintiff was bound by the proceedings had in the prior suit on the principle of res judicata, (3) that plaintiff's action was barred by the Virginia 15 year statute of limitations, since the United States had been in adverse possession of the property from the year 1918, and (4) that the action could not be continued against General Cates, since pending the suit he had ceased to be the Commanding General of the Quantico Marine base in possession of the land in controversy. The judge filed with his order denying plaintiff's motion for summary judgment and granting that of defendant an able and comprehensive opinion, 88 F.Supp. 19, to which nothing need be added, as we are in complete accord with the reasoning and conclusions therein expressed.

The plaintiff argues that the court could not look to the record in the prior litigation in support of the motion for summary judgment; but we think there can be no question as to the correctness of the court's action in doing so. As we said in Morse v. Lewis, 4 Cir., 54 F.2d 1027, 1029:

"The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness. * * * But in exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the courts, in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation."

See also Fletcher v. Bryan, 4 Cir., 175 F.2d 716. Certainly the court should not hesitate to look to its own records to see what they disclose, when it appears

794

therefrom that one of the parties to the prior suit has instituted a new suit in violation of the spirit, if not the letter, of the injunction there entered and is denying the validity of the title of the United States there fully and completely adjudicated.

The plaintiff would treat the proceedings in the prior suit as a nullity because brought against receivers of a state court; but there is nothing in this position. A state statute permits suit against court receivers without express permission of the court. See sec. 6291 of the Virginia Code; and, quite apart from this, there can be no question as to the jurisdiction of the federal courts to entertain suits to quiet title to property in the possession of the United States or to enjoin suits instituted to oust its officers from possession. Especially is this true where, as here, the state has ceded jurisdiction over the property to the United States. This matter was fully discussed by Judge Chesnut, with citation of the controlling authorities, in his opinion appearing in United States v. McIntosh, D.C., 57 F.2d 573, and nothing need be added to that opinion.

Plaintiff insists that the United States, having entered into possession as lessee of the property, cannot assert title against the lessor; but the rule of law relied on manifestly has no application to a case where, as here, the lessee has in the meantime acquired title from the lessor. It is well settled that "a tenant is not estopped to show that his landlord's title has expired or has been terminated by operation of law". Johnson v. Riddle, 240 U.S. 467, 480, 36 S.Ct. 393, 397, 60 L.Ed. 752; 32 Am.Jur. pp. 119–120. There is nothing in plaintiff's case, therefore, even if the establishment of title in the former suit be disregarded; but there is no reason to disregard it. Where the title has been established and declared after full hearing in a suit to which those representing the Quantico Company have duly been made parties, it is clearly not open to a receiver now representing that company to litigate the question again.

There was no error and the judgment appealed from will be affirmed.

Affirmed.