JOSEPH CHAPMAN, by next friend,
VIOLET D. CHAPMAN, Christiansted, St. Croix
U.S. Virgin Islands, Plaintiff

v.

PHILLIP A. GERARD, COMMISSIONER OF EDUCATION

and

REHENIA GABRIEL, DIRECTOR OF PUPIL PERSONNEL
SERVICE and VIVIAN ANDUZE, JOSEPH AUBAIN,
GERARD CHRISTIAN, THELMA DALMIDA,
JOSEPH JERZ, EIRENE McDONALD and RUFUS MARTIN

AS

MEMBERS OF THE VIRGIN ISLANDS BOARD OF
EDUCATION, Defendants

Civil No. 329-1969

District Court of the Virgin Islands
Div. of St. Croix

July 27, 1970

41

HODGE & SHEEN, Christiansted, St. Croix, V.I. (ALBERT A. SHEEN, ESQ., of counsel), *for the plaintiff*

IRWIN J. SILVERLIGHT, ESQ., Assistant Attorney General, Charlotte Amalie, St. Thomas, V.I., Attorney *for the defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

Plaintiff, a minor brings this action by his "next friend," seeking a declaratory judgment, declaring and adjudging section 173 of Title 17 of the Virgin Islands Code, as amended,[1] to be unconstitutional insofar as it bars him from participation in the Territorial Scholarship Fund (hereinafter referred to as the TSF) solely by reason of his alienage.

In this case, the facts are conceded. The plaintiff is an alien admitted to permanent residence in the United States who resides in St. Croix in the United States Virgin Islands. He attended the public schools of the Virgin Islands and graduated from the St. Croix Central High School in June of 1969. While in his senior year, he sought by proper application to avail himself of the benefits of the TSF,[2] in order to further his education. Relying on 17 V.I.C. § 173, the appropriate governmental authority turned down the plaintiff's application on the sole ground that he is not a citizen of the United States. Plaintiff contends that he was thus denied the equal protection of the law, guaranteed to him by the Fourteenth Amendment of the Constitution of the United States, extended and made applicable to this territory by section 3, as amended, of

---

[1] 17 V.I.C. § 173: "Eligibility for scholarship
    Scholarships shall be granted out of the Territorial Scholarship Fund created by section 171 of this title, to applicants therefor who (1) are citizens of the United States; (2) bona fide residents of the Virgin Islands; (3) financially unable to pursue further education or training without assistance; (4) have proven ability and aptitude for such further education or training; (5) are residents of the Virgin Islands either actually living in the Virgin Islands at the time of application, or living outside the Virgin Islands temporarily while pursuing a course of studies."

[2] 17 V.I.C. § 171: "Territorial Scholarship Fund; composition and preservation; use; appropriations
    (a) There is hereby created a special fund in the Treasury of the Virgin Islands to be known as the "Territorial Scholarship Fund." The said fund shall be available for the granting of scholarships and loans to such persons and on such conditions and shall be comprised and managed in the form and manner as hereinafter provided in this chapter.
    (b) The Territorial Scholarship Fund shall be comprised of all such funds, donations, gifts, devises, bequests, and all other kinds of contri-

44

the Revised Organic Act of the Virgin Islands.[3] Though not pleaded in his complaint, plaintiff urges as an additional basis for the relief sought that 17 V.I.C. § 173 is an invalid enactment, because of its repugnancy to a law of the Congress of the United States[4] which seeks to assure all persons of equal educational opportunities in federally assisted programs without regard to race, color, religion, or national origin.

Plaintiff named as defendants the Virgin Islands Commissioner of Education, the Director of Pupil Personnel Services of the Department of Education, and each of the members of the Virgin Islands Board of Education.

Answering plaintiff's complaint, defendants aver that:

1. The Civil Rights Act of 1964 is not germane;

2. The Equal Protection Clause is not offended by 17 V.I.C. § 173, inasmuch as the obligation of the Govern-

---

butions of real or personal property, from persons, corporations, partnerships, trust funds, charitable or other eleemosynary organizations, domestic, national or foreign, as may be made to the said fund from time to time, as well as any contributions to the said funds as may be appropriated by the Legislature.

(c) The Commissioner of Finance shall be the trustee of the fund and shall be authorized to accept for the fund any contributions thereto. He shall manage the fund in such manner as to preserve its pecuniary value, and shall invest such funds as are not needed for current obligations, plus a reasonable reserve, in first priority mortgages or United States government bonds, and shall convert any of the real or personal property into cash if such action will enhance the value of the assets of the fund, and do all other lawful things to increase or preserve the assets of the fund.

(d) The trustee shall make such scholarship grants and loans out of the Territorial Scholarship Fund as may be authorized by the Virgin Islands Board of Education.

(e) To perpetuate the fund provided for in this section, there is hereby authorized to be appropriated annually, out of any available funds in the Treasury of the Virgin Islands, a sum of not less than $15,000, to be included in the budget of the Government and paid into the said fund for disposition in accordance with law."

[3] "...
The following provisions of the amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect as in the United States or in any state of the United States: .... the second sentence of section (1) of the Fourteenth Amendment; ...."

[4] The Civil Rights Act of 1964, more specifically Title 42, U.S.C., sections 2,000(c) et seq. and 2,000(d) et seq.

45

ment of the Virgin Islands to provide public education does not go beyond the secondary school level;

3. The granting of financial assistance at the college and professional school level is a special privilege on which the Government of the Virgin Islands may place reasonable restrictions;

4. The restriction excluding non-citizens is a reasonable one; and

5. The TSF was established to educate and create a pool of qualified persons for government service, and that aliens cannot be considered for this pool because of the mandate of section 29 of the Revised Organic Act of the Virgin Islands.[5]

■ At the outset, I dispense with plaintiff's contention that 17 V.I.C. § 173 is in conflict with and repugnant to the Civil Rights Act of 1964. There is no showing that the TSF receives any federal financial assistance. In this regard, therefore, plaintiff's argument lacks merit and is disregarded without further discussion.

■ In arriving at a decision in this case, I need not rehearse what was stated at length in Hosier,[6] that aliens are indeed persons within the meaning of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. What was there said in Hosier, decided last month, applies with equal force in the instant case. In fact, it might well be argued that if the plaintiffs in Hosier, the children of bonded aliens, merely visitors with a prolonged stay, were touched by the long arm of the Equal Protection Clause, a fortiori this plaintiff, a bona fide resident of the Virgin Islands is protected, having been admitted to the United States as a permanent resident.

---

[5] Section 29 of the Revised Organic Act in pertinent part provides: "All officials of the Government of the Virgin Islands shall be citizens of the United States."

[6] Hosier, et al. v. Evans, et al., Civil No. 8 V.I. 27.

46

■ Nor need the point be belabored in this case, whether or not the Legislature of the Virgin Islands may properly establish legitimate classifications of individuals to be benefited under certain laws, for that is a thesis too well established to require argument or citation of authority. Clearly there can be no affront to the Equal Protection Clause of the Fourteenth Amendment, if a statutory scheme of exclusion has a rational basis and bears a reasonable relationship to the special interest sought to be protected by the legislative enactment. My inquiry then is limited to the question, whether 17 V.I.C. § 173 establishes a reasonable, valid and permissible classification or invidiously discriminates against this plaintiff.

If the plan of exclusion, as contained in 17 V.I.C. § 173, is to be sustained, the only contention of the defendants, which on the face of it possesses sufficient merit to carry the day, is the assertion that the Legislature sought to create a pool of qualified persons for government service, and that the congressional mandate of section 29 leaves defendants no alternative, but to omit aliens from that pool.

■ I find the defendants' reliance on section 29 of the Revised Organic Act to be gravely misplaced. Defendants, in making this contention, mistakingly equate "officials" of the Government with "employees" of the Government. Defendants look to 17 V.I.C. § 172 and conclude that, (a) scholarship from the TSF may be granted only in the fields there mentioned;[7] and (b) a person having been awarded a scholarship, who takes employment in one of these fields upon the completion of his training becomes an "official" of the Government. Defendants are in error.

---

[7] 17 V.I.C. § 172, as amended, establishes annual scholarships in the fields of Medicine, Engineering, Vocational Arts, Teaching, Veterinary Medicine, Agriculture, and one in any of four additional fields, namely Law, Social Science, Government, or Public Administration.

47

■ Though the Organic Act does not expressly define who are and who are not "officials," it is clear that at the time of the enactment of the pertinent section of that Act, an unequivocal meaning of "official" had evolved in legal parlance,[8] and that a distinct difference existed between a "governmental employee" and a "governmental official." An official, as distinguished from an employee, is a person who is invested by law with a portion of the sovereignty of the state, and who is authorized to exercise governmental functions either of the executive, legislative, or judicial branch of the Government.[9] The employee, on the other hand, is a person in public service whose duties are said to be routine, subordinate, advisory, or as directed.[10] The Congress cannot be deemed but to have legislated with these well established definitions and distinctions in mind. It follows, therefore, that the congressional proscription against non-citizen "officials" was not intended to include those who are more properly termed "employees." By way of illustration, it has been held in numerous instances that neither teachers[11] nor school supervisory personnel, including principals[12] are public officials. In the same vein, it has been held that even a school superintendent was not a public official for the reason that he performed his duties under the general control and supervision of the county's board of education and, therefore,

---

[8] Wetzel v. McNutt, 4 F.Supp. 233 (D.C. D.C. 1933); City of Lexington v. Thompson, 250 Ky. 96, 61 S.W.2d 1092 (1933); State Ex rel. Newman v. Skinner, 128 Ohio St. 325, 191 N.E. 127, 93 A.L.R. 331 (1934).

[9] Francis v. Iowa Employment Sec. Commission, 250 Iowa 1300, 98 N.W.2d 733, 735, 736 (1959); State Ex rel. Newman v. Skinner, supra, note 1; Aldine Independent School District v. Standley, 154 Tex. 547, 280 S.W.2d 578, 583, 585 (1955).

[10] Application of Barber, 198 Misc. 135, 100 N.Y.S.2d 668, 670 (1951).

[11] Regents of University System of Georgia v. Blanton, 40 Ga. App. 602, 176 S.E. 673 (1934); Wiley v. Board of Education of City of Detroit, 225 Mich. 237, 196 N.W. 417, 418 (1923); Gelson v. Berry, 233 App. Div. 20, 250 N.Y.S. 577, 578.

[12] Schranz v. Board of Education of City of Louisville, 307 Ky. 590, 211 S.W.2d 861 (1948); Cooke v. Dodge, 164 Misc. 78, 299 N.Y.S. 257, 261.

did not himself exercise functions pertaining to sovereignty.[13] And not all lawyers in government service are properly described as public officials.[14] A distinguishing feature has been said to be the fact that the employee's obligation is merely contractual in nature, and that he performs his duties under such contract, albeit those duties are public in nature. He does not by the performance of such functions become a public official.[15]

██ ██ It cannot be overlooked that the entire statutory scheme relative to the TSF is pitched in terms of "employee" rather than "official." Note for example that section 176(a) requires that persons granted scholarships out of the TSF, as a condition precedent to such grant, execute "a proper contract to the effect that he will accept *employment* by the Government of the Virgin Islands" (emphasis supplied) for as many years as he enjoyed the benefits of the fund. Nor can this Court ignore the past, present, and projected employment policies of the Government of the Virgin Islands. Though not a part of the pleadings, and though no testimony was taken, this Court has full authority to judicially notice what is common knowledge, that the Government of the Virgin Islands does, in fact, employ numbers of aliens, and in a wide variety of governmental capacities. The Court may notice also the announced intention of the Governor of the Virgin Islands that he will seek to recruit persons from the neighboring islands as teachers to staff our undermanned educational facilities. Even during the recently concluded school year, non-citizen teachers were employed. Our public hospitals have been staffed in large degree by non-citi-

---

[13] Anderson v. Industrial Commission, 74 Ohio App. 77, 57 N.E.2d 620, 623 (1943).

[14] Fishes v. City of Mechanicville, 225 N.Y. 210, 121 N.E. 764, 765 (1919); State v. Bloz, 23 Ohio App. 307, 155 N.E. 412, 413 (1927); Wiest v. Northumberland County, 115 Pa. Super. 577, 176 A. 74, 75 (1935).

[15] State v. Bond, 94 W.Va. 255, 118 S.E. 276, 279 (1923).

49

zens, doctors, nurses, and technicians alike. Of all these matters, I take judicial notice, for ". . . dictates of logic will yield to the demands of justice, and the courts, in order to reach a just result, will make use of established or uncontroverted facts not ordinarily on record. . . ."[16] Obviously, the Government's practices evince recognition of that which its preachment stoutly denies.

In view of the foregoing, I find the statutory scheme of exclusion contained in 17 V.I.C. § 173 to be arbitrary, invidious and without reasonable nexus to the special interest allegedly sought to be protected and the claimed purpose it was designed to serve. Plaintiff, a permanent resident, other things being equal, is as competent to serve the Government of the Virgin Islands in various fields of employment as is a citizen. The fear adverted to at oral argument that he might not return to the Virgin Islands, but might go elsewhere to put into practice the professional competence he acquired by reason of the scholarship grants made, holds as true for a citizen and native. The instances in which native-born citizens have not returned to give this Government the benefit of their training and expertise after having received grants from the TSF, while not legion, are of sufficient frequency to indicate that this misgiving should not be raised as a bar to a bona fide resident of "non-immigrant" status. There may be, in point of fact, less reason to suppose that the permanent resident alien will abandon the domicile of his choice, the Virgin Islands, than would the native domiciled here merely by the happenstance of birth.

I hold, therefore, that insofar as 17 V.I.C. § 173 sets up as a condition for participation in the program of

---

[16] Morse v. Lewis, 54 F.2d 1027, 1029 (4 Cir. 1932); see also Ellis v. Carter, 178 F.2d 791 (4 Cir. 1949), Chicago Mercantile Exchange v. Tieken, 178 F.Supp. 779 (N.D. Ill. 1959).

grants under the TSF, that an applicant be a citizen of the United States, it constitutes a clear violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and is, therefore, invalid.

All of this is not to say that the Government of the Virgin Islands is obligated to furnish scholarship grants to all aliens or, for that matter, to any alien. Nor is it even suggested, far less ordered, that grants to non-citizens be made from the TSF to prepare them for offices which fall in the category of "officials" of the Government. The narrow and restricted holding of this Court is that this plaintiff, being a permanent resident of the United States, an inhabitant of the Virgin Islands, and a graduate of its public school system, may not be subjected to the arbitrary discrimination which denies him the opportunity to share in the TSF, if he meets all the other standards and conditions imposed generally on all other applicants, solely because he is not a citizen of the United States. The governmental authority, which administers the TSF, is in no way compelled to deal favorably with plaintiff's application. I hold no more than that if this plaintiff's application be rejected, such rejection must be based on any or all of the other factors that are taken into consideration when a citizen applies, but in no event may he be debarred solely by reason of his alienage.