ATTORNEY GENERAL v CITY OF FLINT

Docket No. 263618. Submitted December 6, 2005, at Lansing. Decided December 13, 2005, at 9:05 a.m. Leave to appeal denied, 474 Mich 1130.

The Attorney General brought an action in the Ingham Circuit Court against the city of Flint, the Flint City Council, the Mayor of Flint, and the individual members of the Flint City Council, alleging that a resolution passed by the council violated Const 1963, art 11, § 3 by granting or authorizing extra compensation for previously rendered services. The emergency financial manager appointed for the city had reduced the council members' compensation. The resolution gave the council members a sum of money to make them whole with respect to their compensation and benefits. The court, Joyce Draganchuk, J., granted summary disposition for the plaintiff. The council and its members appealed.

The Court of Appeals *held*:

1. The trial court did not err by granting summary disposition for the plaintiff. While the council members' compensation was determined by a local officers compensation commission (LOCC) pursuant to MCL 117.5c, which is a part of the Home Rule City Act, the emergency financial manager's reduction of their salaries was authorized under MCL 141.1221(1)(q), which is part of the Local Government Fiscal Responsibility Act. A subsequently enacted statute generally controls over an earlier statute, and a more specific statutory provision controls over a more general provision, irrespective of when the statutes were enacted. The grant of authority to emergency financial managers under MCL 141.1221(1)(q), enacted later in time, is a more specific and limited grant than that to LOCCs under MCL 117.5c(b). Moreover, the Home Rule City Act explicitly provides that the powers of an emergency financial manager supersede the act's provisions. Because the emergency financial manager, acting pursuant to his authority, clearly reduced the council members' level of compensation for the relevant periods, the resolution awarding additional compensation for the same periods violated Const 1963, art 11, § 3.

2. MCL 141.1221(1)(q) did not unconstitutionally deprive the council members of a vested property right without due process. Any right to compensation the council members had was a

statutory right arising under MCL 117.5c(b) that the Legislature could amend; it was not a vested right to which the council members had a legitimate claim of entitlement.

Affirmed.

MUNICIPAL CORPORATIONS — COMPENSATION OF OFFICIALS — LOCAL OFFICERS COMPENSATION COMMISSIONS — POWERS OF EMERGENCY FINANCIAL MANAGERS.

An emergency financial manager appointed for a local unit of government under the Local Government Fiscal Responsibility Act is authorized to reduce the compensation provided to members of the governing body of the local unit in a fiscal emergency regardless of whether that compensation has been determined by a local officers compensation commission (MCL 117.5c[b], 141.1221[1][q]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Richard P. Gartner*, Assistant Attorney General, for the Attorney General.

*Fletcher, Wolf, Pianto & Associates* (by *Christopher J. Pianto*) for the Flint City Council and its individual members.

Before: HOEKSTRA, P.J., and NEFF and DAVIS, JJ.

DAVIS, J. Defendants Flint City Council and its individual members[1] appeal as of right a grant of summary disposition to plaintiff. We affirm.

This case arose out of Edward J. Kurtz's July 8, 2002, appointment as emergency financial manager for the city of Flint. See *Flint City Council v Michigan*, 253 Mich App 378, 385; 655 NW2d 604 (2002). At that time, compensation for city council members had been determined by a local officers compensation commission (LOCC) pursuant to MCL 117.5c and article III of

---

[1] The city of Flint and Flint Mayor Donald J. Williamson were originally named parties, but summary disposition was independently granted in their favor, and plaintiff has not appealed that order.

chapter 2 of the Flint Ordinances. During his term, Kurtz reduced the council members' compensation twice. Just before his term ended, he increased their compensation to the level set by the LOCC during its December 2003 meeting, thereby fixing the council members' salaries at approximately 95 percent of what they had been before Kurtz's appointment. The day after Kurtz's responsibilities terminated, the city council passed a resolution resolving that the council members "be made whole with respect to their compensation and benefits." Pursuant to the resolution, the council members apparently received an aggregate sum of more than $235,000. Plaintiff then filed this suit alleging that the resolution violated Const 1963, art 11, § 3 by granting or authorizing extra compensation for previously rendered services. Defendants argued that Kurtz's reduction of their salaries was either unauthorized or merely a temporary suspension of payment. The trial court granted summary disposition to plaintiff, and this appeal followed.

We first note that the motion for summary disposition was based on MCR 2.116(C)(9), failure to state a valid defense, and MCR 2.116(C)(10), no genuine issue of material fact. We review motions for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). However, a motion under MCR 2.116(C)(9) should be decided only on the pleadings. See *Maiden, supra* at 119-120. The trial court relied on evidence not included in the pleadings, so we treat this as a grant of summary disposition pursuant to only MCR 2.116(C)(10). *Village of Dimondale v Grable*, 240 Mich App 553, 565; 618 NW2d 23 (2000). We also review de novo issues of statutory interpretation, *Miller v Mercy Mem Hosp*, 466 Mich 196, 201; 644 NW2d 730 (2002), and constitutional issues, *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999). Our duty is

to ascertain and effectuate the intent behind the statute or constitutional provision from the language used in it.

Defendants first argue that Const 1963, art 11, § 3, which prohibits extra compensation for public officers, is inapplicable because the compensation was set by the LOCC pursuant to statute and Kurtz only temporarily suspended it rather than eliminating it, so the resolution merely paid back the council members' vested salaries. We disagree.

Const 1963, art 11, § 3 states: "Neither the legislature nor any political subdivision of this state shall grant or authorize extra compensation to any public officer, agent or contractor after the service has been rendered or the contract entered into." The plain language of this provision forbids paying, or authorizing payment for, a city council member retroactively for services the member has already performed. See *E C Nolan Co, Inc v Dep't of State Hwys*, 45 Mich App 364, 367; 206 NW2d 472 (1973); see also *Attorney General v Detroit Bd of Ed*, 225 Mich 237, 242; 196 NW 417 (1923) (addressing substantially identical language in Const 1908, art 16, § 3). Defendants argue that their payment was authorized before the services were rendered, pursuant to MCL 117.5c(b), which states that an LOCC "shall determine the salary of each local elected official." However, plaintiff argues that Kurtz's reduction of the members' salaries was prospective and retroactively authorized by MCL 141.1221(1)(q), which states:

> (1) An emergency financial manager may take 1 or more of the following additional actions with respect to a unit of local government in which a financial emergency has been determined to exist:

* * *

(q) Reduce, suspend, or eliminate the salary, or other compensation of the chief administrative officer and members of the governing body of the unit of local government during the financial emergency. This subdivision does not authorize an emergency financial manager to impair vested retirement benefits. If an emergency financial manager has reduced, suspended, or eliminated the salary or other compensation of the chief administrative officer and members of the governing body of a unit of local government before the effective date of the amendatory act that added this subdivision, the reduction, suspension, or elimination is valid to the same extent had it occurred after the effective date of the amendatory act that added this subdivision.

The use of the mandatory word "shall" in MCL 117.5c(b) requires the LOCC to determine council members' salaries. See *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65; 642 NW2d 663 (2002). However, the plain language of MCL 141.1221(1)(q) also clearly authorizes an emergency financial manager to reduce the compensation provided to members of the governing body of a local unit of government, and that authority is plainly retroactive in its application.

When statutory language is unambiguous, "we must presume that the Legislature intended the meaning it clearly expressed and further construction is neither required nor permitted." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). A more specific statutory provision controls over a more general provision, irrespective of when the statutes were enacted. *Antrim Co Treasurer v Dep't of Treasury*, 263 Mich App 474, 484; 688 NW2d 840 (2004). A subsequently enacted statute will also generally control over an earlier statute. *Slater v Ann Arbor Pub Schools Bd of Ed*, 250 Mich App 419, 435; 648 NW2d 205 (2002). The grant of authority to emergency financial managers by MCL 141.1221(1)(q) is a more

specific and limited grant than the one given to LOCCs by MCL 117.5c(b). Further, MCL 141.1221(1)(q) was enacted later in time. As such, the conclusion that the emergency financial manager's powers in this context prevail over the LOCC's powers is doubly compelling. *Slater, supra* at 435.

Moreover, MCL 117.1b explicitly provided that the powers of an emergency financial manager under the previous version of the Local Government Fiscal Responsibility Act, 1988 PA 101, superseded the provisions of the Home Rule City Act. MCL 117.16 contains citations to sections of the Michigan Compiled Laws repealed by MCL 141.1291 as part of the enactment of the current Local Government Fiscal Responsibility Act, MCL 141.1201 *et seq.,* but the significant citation is to the act itself. The reference to specific section numbers is to help the reader locate the referenced authority, which it still does, albeit less efficiently. Legislative analysis is a "generally unpersuasive tool of statutory construction," *Frank W Lynch & Co v Flex Technologies, Inc,* 463 Mich 578, 587; 624 NW2d 180 (2001), but the House legislative analysis for what became 2003 PA 282 indicated that MCL 141.1221(1)(q) was prompted in part by the Flint financial crisis and concerns about whether Kurtz could reduce the city council's salary. House Legislative Analysis, SB 771 (Substitute H-1), December 9, 2003, p 1. An amendment "enacted soon after controversies arise regarding the meaning of the original act" is regarded as an interpretation of the original act. *Detroit v Walker,* 445 Mich 682, 697; 520 NW2d 135 (1994). In the event of a fiscal emergency, the Legislature intended for emergency financial managers to have the authority, notwithstanding the ordinary operation of the Home Rule City Act, to take necessary steps "to remedy this emergency situation by requiring prudent fiscal management." MCL 141.1202.

Therefore, the provisions of MCL 117.5c(b) did not preclude Kurtz from reducing or suspending the council members' salaries. Defendants argue that Kurtz only suspended the salaries. Kurtz's directives state exactly how much money the council members "will be paid" either each month or each meeting day. They contain no indication that additional compensation would be forthcoming in the future or that they were receiving only a portion of what they were earning, or any other hint that the members' pay was only suspended. The directives clearly indicate Kurtz's intent to reduce the council members' level of compensation for work done after the effective dates of the directives. Those directives set the members' salaries for the relevant periods, so the resolution awarding additional compensation for those periods violated Const 1963, art 11, § 3.

Defendants also argue that MCL 141.1221(1)(q) is unconstitutional because it allowed Kurtz to impair the council members' vested property rights in their employment without due process of law. We disagree.

"A state may not deprive any person of life, liberty, or property without due process." *Tolksdorf v Griffith*, 464 Mich 1, 7; 626 NW2d 163 (2001), citing US Const, Am XIV; see also Const 1963, art 1, § 17. The retroactive and prospective aspects of economic legislation both must comport with due process by serving a legitimate purpose through rational means. *Gen Motors Corp v Romein*, 503 US 181, 191; 112 S Ct 1105; 117 L Ed 2d 328 (1992); *Romein v Gen Motors Corp*, 436 Mich 515, 526-528; 462 NW2d 555 (1990). Defendants do not argue that MCL 141.1221(1)(q) serves an illegitimate purpose or is an irrational way of achieving a legitimate purpose.

Defendants argue only that the council members had a vested right to a certain level of continued compensa-

tion that could not be legislatively impaired. *Ramey v Pub Service Comm*, 296 Mich 449, 461; 296 NW 323 (1941). For a property interest to be protected pursuant to the Due Process Clause, a claimant must have a " 'legitimate claim of entitlement' " to the property interest and not just a unilateral expectation concerning the property interest. *York v Civil Service Comm*, 263 Mich App 694, 702-703; 689 NW2d 533 (2004) (citation omitted). Any right to compensation the council members had arose from MCL 117.5c(b), which gave the city the *statutory* right to have an LOCC set the salaries for local elected officials. "It is the general rule that that which the legislature gives, it may take away." *Lahti v Fosterling*, 357 Mich 578, 589; 99 NW2d 490 (1959). A right that arises by statute is valuable, but not vested. *Id.* In any event, MCL 141.1221(1)(q) was enacted because the law concerning whether an emergency financial manager could unilaterally reduce the salaries of city council members was unclear. House Legislative Analysis, SB 771 (Substitute H-1), p 1. "Reliance on an area of law that is in a state of flux is not reasonable reliance." *Romein, supra*, 436 Mich 531. MCL 141.1221(1)(q) did not unconstitutionally deprive the city council members of a vested property right without due process.

Affirmed.